In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1665

ALONSO CORRAL,

*Petitioner-Appellant,*

*v.*

BRIAN FOSTER,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 19-C-1809 — **William C. Griesbach**, *Judge.*

ARGUED MARCH 2, 2021 — DECIDED JULY 16, 2021

Before RIPPLE, HAMILTON, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* A jury convicted Alonso Corral of at-tempted homicide after two men who knew him swore that he shot at them. At trial, Corral presented a mistaken-identity defense, urging that the real shooter was a 15-year-old named "Kenny."[1] Because Corral's trial counsel believed that Corral

---

[1] Because "Kenny" was a juvenile at the time of trial, the state court used a pseudonym, as do we.

and Kenny did not look alike, he did not present evidence of Kenny's appearance. Corral argues that this decision was constitutionally deficient. After failing to persuade state courts of this view, Corral petitioned for federal habeas relief under 28 U.S.C. § 2254, which the district court denied. Because the last state court to adjudicate the merits of Corral's ineffectiveness claim considered his claim in light of the relevant circumstances and reasonably concluded that his counsel made a sound strategic decision not to present the appearance evidence, we affirm under the doubly deferential standard that governs our review.

## I

## A

In the afternoon on February 5, 2014, shots were fired in the parking lot of an apartment complex in Waukesha, Wisconsin. John Brautigam, Damian Jimenez, and two children were parked in a van when a man approached and shot at Brautigam through his open window. Brautigam ducked, the shooter fired again, and Jimenez sped them away.

At trial, Brautigam and Jimenez both identified Corral as the shooter. Brautigam testified that he saw Corral in the parking lot a few minutes before the shooting; Brautigam then looked down at his phone, and upon looking back up, he saw Corral pointing a gun at him from five to ten feet away. Brautigam had known Corral for fifteen years; they were friends, and both were members of the Latin Kings gang. Brautigam saw Corral regularly before the shooting incident. He noted that Corral was wearing a hat that he had seen him wear "plenty of times" before. Jimenez testified that he saw two men nearby before the shooting; one ran behind another

vehicle, and the second, whom Jimenez recognized as Corral, walked toward his van. Jimenez did not know Corral well, but he said, "What's up, Alonso?" before Corral pulled out a gun and started shooting.

Corral's counsel argued that Jimenez and Brautigam's identifications—which were the only evidence tying Corral to the crime—were unreliable for several reasons. First, he insinuated that both men were drug addicts trying to buy heroin at the time of the shooting. Second, both men had made inconsistent statements about the shooting. Brautigam initially told police that he had not seen the shooter; he changed his story only after a detective said that Jimenez had already identified Corral. Then, a few months before trial, Brautigam told Corral's private investigator that he was not "100% sure" that Corral was the shooter. Meanwhile, Jimenez initially told the police that the shooting happened "really fast," and he could not remember all of it. Third, both men's views of the shooter's face were partially obscured by the shooter's hat and hoodie. Finally, although Corral does not have a right arm, neither man said that the shooter was missing his right arm. (Brautigam swore that the shooter used his left hand, but he said he was sure of this only because he knew Corral had no right arm.)

Corral's counsel further argued that the real shooter was a juvenile named Kenny. Kenny and Corral were together at the apartment complex during the shooting, and both were wearing the same color clothing and the same hat. Five days after the shooting during a police interview, Kenny alternated between implicating himself and Corral. At one point, Kenny admitted that he shot at Brautigam because Brautigam had recently burglarized local homes and he "wanted to kill

[Brautigam] to protect kids." He explained that when Jimenez parked the van, he ran outside with a gun, which Corral did not know he had, and Corral followed him. He added that if Corral took responsibility for the shooting, he was "taking the blame for me." But after the interviewing detective expressed skepticism, Kenny changed his story and identified Corral as the real shooter. Kenny said Corral took the gun from him before they went outside to confront Brautigam. Kenny later asked the detective to erase that statement because he did not want "Corral to see that he had ratted him out."

Kenny did not appear before the jury at trial; he invoked his Fifth Amendment privilege outside the jury's presence pursuant to Wisconsin law. See WIS. STAT. § 905.13(2). During deliberations, the jury asked the court, "Do we know the height, weight[,] and race of [Kenny]?" Because the parties had not submitted any evidence of Kenny's appearance into the trial record, the court answered (after discussion with and upon agreement of the parties) that "the jury is required to rely on their collective recollections" regarding Kenny's appearance.

Ultimately, the jury accepted that Corral was the shooter and convicted him on all counts: one count of attempted homicide; three counts of recklessly endangering the safety of others; one count of recklessly using a firearm; and one count of bail jumping, since Corral was under state supervision at the time of the shooting. The court sentenced Corral to 30 years' imprisonment, followed by 20 years of supervised release.

B

Corral moved for state post-conviction relief arguing, as relevant here, that his trial counsel was ineffective because he

failed to present evidence of Corral and Kenny's likeness. He contended their likeness was evident from booking photos and police reports, which reflect their similar heights, weights, and races. The police reports had been produced in discovery; the photos were not.

At a post-conviction hearing, Corral's trial counsel testified that he did not present evidence of Kenny's appearance because, after seeing them both, he thought that Kenny did not look like Corral, who was ten years older than Kenny. He watched a video of Kenny's interrogation and saw no "striking resemblance." This opinion was reaffirmed after he saw Kenny outside the jury's presence during the trial. Counsel also reviewed all discovery in Corral's case, including the police reports. He did not recall whether those reports specified that Kenny and Corral had the same height or weight, but he accepted they had "a similar physical build." Counsel also knew that the police reports stated that the two were the same race, but from his own observation, he concluded otherwise.

Counsel explained at the hearing why he did not seek discovery of Kenny and Corral's booking photos to support the mistaken-identity defense: "If I had introduced the photo and it's a White guy versus a Mexican guy and there is a huge age difference and the jury rejects it, then I have got a problem." When presented with the photos at the hearing, counsel admitted that there was a "striking similarity between the two" and that there was "no question" that he would have introduced the photos had he seen them before trial. But, he said, because he had watched the interrogation video which showed their different appearances, he saw no reason to seek out the booking photos.

Corral's state-court appeals were unsuccessful. After the
state post-conviction trial court held that Corral's counsel's
performance was not deficient, the Wisconsin Court of Ap-
peals agreed. It ruled that Corral's counsel's testimony
"makes clear that the failure to present evidence of Kenny's
physical appearance was the product of a strategic decision
based upon [counsel's] personal observations." It added that
it "will not second-guess a trial attorney's 'considered selec-
tion of trial tactics or the exercise of a professional judgment
in the face of alternatives that have been weighed by trial
counsel.'" See *State v. Elm*, 549 N.W.2d 471, 476 (Wis. Ct. App.
1996) (quoting *State v. Felton*, 329 N.W.2d 161, 169 (Wis. 1983)).
The court concluded that because Corral failed to show that
counsel's tactics were unreasonable, his claim of ineffective-
ness failed. The Wisconsin Supreme Court denied review, and
Corral did not seek certiorari in the Supreme Court of the
United States. Instead, he petitioned for federal habeas relief
under 28 U.S.C. § 2254, which the district court denied.

II

A

On federal habeas appeal, Corral repeats the argument he
presented to the Wisconsin Court of Appeals: that he received
ineffective assistance of counsel because his trial counsel
should have introduced evidence of his and Kenny's similar
appearance. To prevail on that claim in state court, Corral had
to demonstrate his counsel provided ineffective assistance un-
der *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* re-
quires a showing of both (1) deficient performance and
(2) prejudice resulting from it. *Id.* at 687. *Strickland*'s first

prong (deficient performance)[2] is satisfied if "counsel's representation fell below an objective standard of reasonableness," and the second prong (prejudice) is satisfied if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Applied here, under the two-prong *Strickland* standard, Corral had to establish that (1) his counsel's decision not to introduce appearance evidence was objectively unreasonable, and (2) but for his counsel's unreasonable error, there is a reasonable probability that the result of his trial would have been different. See also *Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable."). Judicial scrutiny of counsel's performance under *Strickland* is "highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

We review de novo the district court's denial of Corral's petition for a writ of habeas corpus based on ineffective assistance of counsel, but the inquiry is narrow. See *Schmidt v. Foster*, 911 F.3d 469, 476 (7th Cir. 2018) (en banc). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we review the last reasoned state-court decision to address the petitioner's claim on the merits, see *id.* at 477—here, the Wisconsin Court of Appeals' decision. As relevant here, we cannot issue federal habeas relief on a claim the state court

---

[2] Our case law sometimes refers to this as the "deficiency" or "performance" prong.

adjudicated on the merits unless that court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at 476 (quoting § 2254(d)(1)). A state-court decision is "contrary to" clearly established federal law if the state court "applie[d] a rule different from the governing law set forth" in Supreme Court decisions or decided a case differently than the Supreme Court has "on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted). And it involves an "unreasonable application of" clearly established federal law when the state court correctly identified the governing rule from Supreme Court precedent but "unreasonably applie[d] it to the facts of the particular case." *Id.* (citation omitted). To satisfy the high "unreasonable application of" bar, "a habeas petitioner is required to 'show that the state court's ruling … was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Richter*, 562 U.S. at 103). "This standard is … difficult to meet," meaning a federal court may grant habeas relief "solely in those relatively uncommon cases in which state courts veer well outside the channels of reasonable decision-making about federal constitutional claims." *Schmidt*, 911 F.3d at 477 (internal quotation marks and citations omitted). Thus, in answering whether the Wisconsin Court of Appeals violated clearly established federal law when it rejected Corral's claim that his counsel performed ineffectively, "we owe deference to both [Corral's] counsel *and* the state court." See *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (per curiam) (emphasis in original) ("This analysis is 'doubly deferential' when, as here, a state court has

decided that counsel performed adequately.") (citation omitted).

The parties do not dispute that AEDPA deference applies to our review of *Strickland*'s deficient performance prong since both agree that the Wisconsin Court of Appeals adjudicated that prong in denying Corral's ineffectiveness claim. Corral nonetheless argues that he can clear AEDPA's restrictive provisions on this prong. But, for the reasons that follow, we hold that Corral has failed to show that the Wisconsin Court of Appeals' determination that Corral's counsel performed adequately was "contrary to" or "an unreasonable application of" clearly established federal law. Given that Corral is entitled to habeas relief only if he satisfies both of *Strickland*'s prongs, we need not analyze whether Corral was prejudiced by the lack of evidence his counsel presented regarding Kenny's appearance. See *Thompson v. Vanihel*, 998 F.3d 762, 767 (7th Cir. 2021); *Dunn v. Jess*, 981 F.3d 582, 591 (7th Cir. 2020) ("Failing to prove either [prong] defeats a petitioner's claim.") (quoting *Winfield v. Dorethy*, 956 F.3d 442, 452 (7th Cir. 2020)).[3]

B

Corral argues he is entitled to federal habeas relief under AEDPA because the Wisconsin Court of Appeals' decision was "contrary to" clearly established federal law, specifically *Strickland*'s standard for evaluating deficient performance. See *Dunn*, 981 F.3d at 591 (explaining the federal law set forth

---

[3] Because we do not reach the prejudice prong, we likewise need not resolve the parties' debate about whether the Wisconsin Court of Appeals decided the prejudice prong and whether AEDPA deference would apply to our review of that prong.

by the Supreme Court in *Strickland* is clearly established). To support this argument, Corral contends that when analyzing whether his counsel's representation fell below an objective standard of reasonableness, the Wisconsin Court of Appeals did not evaluate his counsel's performance "in light of all the circumstances," as required by *Strickland*. See *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (showing the Supreme Court has made clear that "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and *in light of all the circumstances*") (emphasis added) (citing *Strickland*, 466 U.S. at 689). He claims that the state court's analysis ignored certain facts that were relevant to the reasonableness of his counsel's performance, like the fact that counsel chose not to introduce, despite its availability, favorable evidence of Kenny and Corral's similar appearance—namely, the police reports and booking photos—since the state court did not specifically refer to that evidence in its decision.

We disagree. The state court's decision reflects that the court was aware of, and considered, the contested evidence. The court accurately summarized Corral's position about counsel's deficient performance—that "counsel failed to present evidence regarding the similarity in physical appearance between himself and Kenny." To be sure, in his briefing before that court, Corral made clear his position that his counsel's deficiency resulted from his failure to introduce the available police report and booking photo evidence. We have no reason to doubt that the state court read the parties' briefs. Cf. *United States v. Dote*, 328 F.3d 919, 924 n.3 (7th Cir. 2003) ("[W]e … presume the district court read the briefs submitted.") (quoting *Ross Bros. Const. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 872 (7th Cir. 2002)). We are therefore confident from

context that the state court based its analysis of counsel's performance on the very circumstances Corral argued were relevant to his claim. Corral does not cite, nor have we found, a Supreme Court decision requiring that courts reference each exhibit or piece of evidence a petitioner thinks counsel should have introduced at trial (in this case, the police reports and booking photos) to comply with *Strickland*'s mandate that courts consider counsel's performance in light of all the circumstances. On the other hand, the Supreme Court has generally cautioned that "federal courts have no authority to impose mandatory opinion-writing standards on state courts" and must read state court opinions with the understanding that "[t]he caseloads shouldered by many state appellate courts are very heavy." *Johnson v. Williams*, 568 U.S. 289, 300 (2013) (citations omitted).

Corral points out that the Wisconsin Court of Appeals did not cite *Strickland* or otherwise summarize that the Supreme Court's test for deficient performance requires consideration of the totality of circumstances. Again, we are not convinced that this shows that the state court's decision was contrary to *Strickland*. A state court decision need not cite relevant Supreme Court precedent to avoid being found contrary to clearly established federal law; "§ 2254(d) will bar federal relief even if [the] state court does not cite, or even know about, controlling Supreme Court precedents so long as neither the reasoning nor the result of the state-court decision contradicts them." *Riley v. Calloway*, 882 F.3d 738, 744 (7th Cir. 2018) (internal quotation marks omitted) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). Here, we see nothing wrong with the Wisconsin Court of Appeals citing a state case rather than federal decisions when the state case articulates a rule that mirrors the general federal standard for evaluating ineffective

assistance claims. Compare *State v. Elm*, 549 N.W.2d 471, 476 (Wis. Ct. App. 1996) ("A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel."), with *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). And even if we accept Corral's contention that the state case does not discuss a totality of circumstances test, as we explained above, the Wisconsin Court of Appeals evaluated Corral's counsel's performance in light of the relevant circumstances, as federal law requires. The Wisconsin Court of Appeals did not apply a rule that contradicts *Strickland* so its evaluation of counsel's performance under *Strickland*'s first prong was not contrary to clearly established federal law.

Nor was the state court's decision "an unreasonable application of" clearly established federal law. The Wisconsin Court of Appeals reasonably applied the principles of *Strickland* to reject Corral's claim that his counsel was deficient for failing to introduce evidence of his and Kenny's similar appearance. "'To avoid the inevitable temptation to evaluate a lawyer's performance through the distorting lens of hindsight, *Strickland* establishes a deferential presumption that strategic judgments made by defense counsel are reasonable.'" *Dunn*, 981 F.3d at 591 (quoting *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012)). The state court recognized this presumption and, in line with *Strickland*, permissibly deferred to counsel's strategic decision not to introduce the appearance evidence that he determined, after reviewing the video of Kenny's interrogation, might harm Corral's case. When counsel reasonably decides that evidence "might on balance harm rather than help the defendant," counsel's strategic decision

not to offer the evidence is beyond constitutional reproach. *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008). Corral does not allege counsel's assessment of the interrogation video was unreasonable. Nor does he provide any basis to question the reasonableness of counsel's assessment. Indeed, he has not introduced the video into this court's record. Recall also that unlike Corral, Kenny was a juvenile and white, and he was not missing an arm. We therefore see no basis to disagree with the state court that counsel's strategic decision not to offer evidence of Kenny's appearance was sound. See *Dunn*, 141 S. Ct. at 2412 (state court entitled to reject petitioner's ineffectiveness claim "if trial counsel had any 'possible reaso[n] … for proceeding as they did'") (quoting *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)).

Corral offers three replies, but none is persuasive. First, he observes that at the post-conviction hearing, counsel admitted that Corral and Kenny's booking photos were "strikingly similar." But "[s]o long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel." *Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011). This is true even when, in hindsight, another decision may have led to a better result. See *Atkins v. Zenk*, 667 F.3d 939, 945 (7th Cir. 2012) (when counsel makes a reasonable strategic decision, it is "not subject to Monday-morning quarterbacking"). So, although counsel later expressed some post-trial regret for not presenting Kenny and Corral's booking photos into evidence, that does not change the soundness of counsel's earlier decision to omit appearance evidence in light of his pre-trial assessment of Kenny's interrogation video.

Corral next appears to suggest his counsel should have at least requested and seen the booking photos before deciding not to offer them into evidence. But "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91; see also *Dunn*, 141 S. Ct. at 2410 ("Defense lawyers have limited time and resources, and so must choose from among countless strategic options.") (internal quotation marks and citation omitted). Because counsel determined, based on his review of the interrogation video, that Kenny did not look like Corral—again, an assessment that Corral does not challenge—it was reasonable for him not to seek more appearance evidence. The reasonableness of counsel's decision is underscored by the fact that there is no evidence that, before or during trial, Corral pressed counsel to seek or introduce evidence of Kenny's appearance. Indeed during oral argument we asked whether Corral ever vocalized disagreement with his trial counsel's approach. Corral's federal appellate counsel denied any such disagreement, stating: "To the direct question you asked, do I have any evidence of a disagreement between Corral and his counsel, no I don't."

Finally, Corral contends that even if counsel reasonably determined that Kenny and Corral did not look alike, counsel still could have presented the non-visual evidence of their similarities: the police reports listing their height, weight, and race. But if counsel had offered this evidence, he would have invited the State to introduce, as counterevidence, the very visual evidence that he reasonably feared would undermine his defense theory—Kenny's interrogation video. It was thus not unreasonable for counsel to decline to pursue a tactic that could have undermined Corral's chosen defense.

Accordingly, Corral has failed to demonstrate that the state court unreasonably applied federal law in determining that his counsel made a sound strategic decision not to present the contested appearance evidence. We defer to the state court's reasonable decision that the circumstances of Corral's case do not merit relief. See *Dunn*, 141 S. Ct. at 2407 ("Federal habeas courts must defer to reasonable state-court decisions.") (citing § 2254(d)).

*   *   *

The Wisconsin Court of Appeals did not violate clearly established federal law when evaluating the effectiveness of Corral's counsel's performance under *Strickland*'s first prong. The district court's decision denying Corral's habeas petition is AFFIRMED.