In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――――――

No. 20-1451

PRENTICE S. SANDERS,

*Petitioner-Appellant,*

*v.*

DYLON RADTKE,

*Respondent-Appellee.*

―――――――――――

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 20-cv-00122 — **William C. Griesbach**, *Judge.*

―――――――――――

ARGUED JANUARY 20, 2022 — DECIDED SEPTEMBER 1, 2022

―――――――――――

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Prentice Sanders pleaded guilty to
two counts of attempted first degree intentional homicide and
was sentenced to prison. He later sought relief under 28
U.S.C. § 2254, which the district court summarily denied. On
appeal Sanders contends that court erred because his petition
plausibly stated claims for ineffective assistance of counsel
and that he did not knowingly and voluntarily plead guilty.
But Sanders's claim for ineffective assistance of counsel is

procedurally defaulted, and it plainly appears from Sanders's petition and attached exhibits that he is not entitled to relief on his claim that his guilty pleas were not knowing and voluntary. So, we affirm.

**I**

*State Trial Proceedings*. In 2011 Sanders drove a U-Haul truck into his sister and her boyfriend and was charged with two counts of attempted first degree intentional homicide. At the time of the offense, Sanders suffered from schizophrenia and was not taking his prescribed medication. He had not completed high school, and his precise educational level was unknown. The state trial court ordered a competency evaluation, and the Wisconsin Forensic Unit reported initially that Sanders lacked the mental capacity to proceed or to assist in his defense. Sanders received treatment, was reevaluated, and a second report suggested he was "malingering" or intentionally producing false symptoms. It also concluded that Sanders was competent to proceed. Rather than contest his competency, Sanders entered into a negotiated agreement to plead guilty to both counts and a plea hearing was held.

In a plea questionnaire, Sanders agreed:

- he had read the criminal complaint and his attorney had read it to him;

- he understood the charges to which he was pleading guilty had elements the State would have to prove beyond a reasonable doubt at trial, and his attorney had explained those elements to him; and

> - he had three years of schooling, and he did not have a high school diploma or equivalent degree.

In response to questions from the state trial court, Sanders reiterated he had read and understood the criminal complaint. When asked whether he had discussed the elements of the charges with his counsel, Sanders replied: "Not really. I would like to go over that again." The court then read the relevant jury instructions to Sanders twice (once for each count). Sanders confirmed he understood that by pleading guilty, he was admitting to the elements of those charges. The state trial court then accepted Sanders's guilty pleas on each count.

Although not discussed at the plea hearing, Sanders's cognitive abilities and educational level were considered at his sentencing hearing. Also discussed at sentencing was whether Sanders could have pleaded not guilty by reason of mental disease or defect.[1] Specifically, his trial counsel said he and Sanders had conferred on a "not guilty by mental defect claim," but that "[u]ltimately [Sanders] decided to reject that." The state trial court imposed two consecutive terms of seven years initial confinement in prison followed by a total of ten years extended supervision.

*State Postconviction Proceedings*. On July 13, 2012, the day after sentencing, Sanders gave notice of his intent to pursue postconviction relief and he was appointed new counsel. That attorney filed a no-merit report, concluding that Sanders lacked a meritorious claim that his pleas were not knowingly, voluntarily, or intelligently entered. Sanders filed three responses to the no-merit report, the last on April 30, 2015. He

---

[1] *See* WIS. STAT. § 971.15, Mental responsibility of defendant (2022).

argued that his trial counsel had not discussed available trial defenses or the possibility of pleading not guilty by reason of mental disease or defect. Sanders also said he had not understood the nature of the charges against him when he entered his guilty pleas.

On January 13, 2016, the Wisconsin Court of Appeals rejected the no-merit report, denied appointed counsel's motion to withdraw, and dismissed the appeal. The state appellate court reasoned that Sanders had pointed to facts outside the record to support his plea withdrawal claim, so it could not resolve the factual disputes. For example, while trial counsel had stated at sentencing that Sanders declined to plead not guilty by reason of mental defect, Sanders argued this was an "outright lie." Sanders further maintained that contrary to his plea questionnaire, trial counsel had not gone over the elements of the homicide charges with him. According to Sanders, he did not know that acting with a specific intent to kill was an element of the offense. And even though the state trial court had reviewed the jury instructions with Sanders, the state appellate court was not convinced he understood the charges. It had "sufficient concerns about whether [Sanders's] pleas were knowing, intelligent, and voluntary." Accordingly, the state appellate court remanded the case so Sanders could pursue postconviction relief and an evidentiary hearing in the state trial court.

On remand, Sanders brought two postconviction motions to withdraw his guilty pleas, asserting first that he did not understand the elements of the offenses to which he pleaded, and second that his trial counsel was ineffective. The issues were briefed, and the state trial conducted a *Machner* hearing

on April 28, 2017.[2] Sanders and his trial counsel testified at the hearing.

In an exceptionally thorough written decision, the state trial court denied both postconviction motions. That court began by making two credibility determinations. It found Sanders's trial counsel "very credible in all regards." To his credit, trial counsel admitted that he could recall some—but not all—of the facts from Sanders's plea hearing about five years earlier, which "demonstrated that he was testifying honestly about what he recalled." In contrast, the court found Sanders's testimony "was generally not credible, and, specifically on critical issues, [his] testimony was evasive, exaggerated, non-specific and/or otherwise not credible." The court "found Sanders to be an intelligent person," who was "quite capable of verbally jousting with the State's attorney and parsing his words on cross examination." Throughout questioning, "Sanders demonstrated that he understood the important issues and that he … had prepared to respond to significant questions in [a] way that was favorable to his position," repeatedly emphasizing his lack of education and other "themes" supporting his arguments. To the court, these responses "sounded contrived, coached and/or insincere," and "at several points in his cross examination, Sanders admitted that he was untruthful in his responses to [the] Judge." Sanders's testimony, in the court's view, was also fraught with

---

[2] In Wisconsin, a *Machner* hearing is "[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case." *State v. Balliette*, 805 N.W.2d 334, 341 (Wis. 2011).

"extreme responses" that were framed "unequivocally and without limitation" and which "lack[ed] credibility."

Following these credibility determinations, the state trial court made seven factual findings, each supported by extensive analysis:

- Trial counsel "read the criminal complaint to Sanders and discussed the factual allegations of the complaint with Sanders in detail prior to the plea hearing";

- Trial counsel "provided Sanders with a copy of the criminal complaint to read, and Sanders read the complaint himself prior to the plea hearing";

- Trial counsel "explained the factual elements of the offense of Attempted First Degree Intentional Homicide to Sanders prior to the plea hearing";

- Trial counsel "explained to Sanders the Constitutional rights that are waived by … entering a 'guilty' plea";

- "At the time of the guilty plea hearing, Sanders had an education level that went beyond the third grade";

- "Sanders did not have intellectual limitations that would have prevented him from understanding the elements of the offense when those elements were read to Sanders by the judge at the plea hearing"; and

- Trial counsel "discussed the possible mo-
  tions and defenses to the charges with Sand-
  ers."

Based on these credibility determinations and factual find-
ings, the trial court reached three legal conclusions. First, trial
counsel "provided effective representation." Second, even if
trial counsel's representation was deficient, "the defendant
was not prejudiced by any alleged deficiency." And third,
"[t]he defendant's guilty pleas were made knowingly, volun-
tarily and intelligently." Therefore, the court denied Sanders's
postconviction motions.

Sanders then appealed, and the Wisconsin Court of Ap-
peals affirmed the trial court. While Sanders had previously
"argued that he received ineffective assistance of counsel" be-
fore the state trial court, the state appellate court pointed out
that "Sanders d[id] not appeal this aspect of the circuit court's
decision." So, the only issue before the state appellate court
was whether Sanders's guilty pleas were made knowingly,
voluntarily, and intelligently.

On this point, Sanders argued that the state trial court's
factual findings about his education level and comprehension
abilities were clearly erroneous because his testimony on
those topics was unrebutted. The state appellate court
disagreed. After pointing to several inconsistencies and over-
statements in his contentions, that court concluded "all of
Sanders's arguments suffer from a fatal flaw in that they rely
on Sanders's own assertions and testimony about his cogni-
tive abilities." Given the state trial court's thorough credibility
findings—which Sanders did not adequately call into ques-
tion—the state appellate court reasoned that "the [state trial]
court was entitled to disregard Sanders' non-credible

testimony and instead base its factual findings on evidence that it found more credible." This "ample credible evidence" included the plea questionnaire, plea hearing transcript, testimony from Sanders's trial counsel, and the state court's own perception of Sanders's cognitive abilities on postconviction review.

Sanders also contended that his "long and extensive mental health history" should be considered. On that topic, the state appellate court stated "Sanders was competent at the time of the plea hearing," and he had failed to make "any developed argument as to how his past mental health issues relate to his comprehension abilities and intellectual limitations when competent." Because no evidence suggested that Sanders was experiencing mental health issues during the plea hearing, the court saw "no basis for treating Sanders's past history as evidence that he did not understand the proceeding or that his intellectual ability was limited." "Such a conclusion is particularly illogical," the state appellate court concluded, "in light of the record evidence suggesting that Sanders was malingering and intentionally producing false symptoms to avoid prosecution."

Sanders argued last that the state trial court improperly assessed his cognitive abilities at the evidentiary hearing, rather than as of the guilty plea five years earlier. He insisted his "current capabilities" were due "entirely to the education he ha[d] received while in prison," which made his intellectual abilities at the *Machner* hearing "thoroughly irrelevant" in assessing his mental capacity at the guilty plea hearing. But to the state appellate court, that argument strained credulity: "While we appreciate Sanders' vote of confidence in the prison education system, we disagree that the [state trial]

court was required to accept Sanders' testimony that his current cognitive abilities are an entirely recent development."

The state appellate court affirmed, and the Wisconsin Supreme Court denied his petition for review.[3]

*Federal Habeas Proceedings*. Following these state court rulings, Sanders filed a handwritten, pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. He sought habeas relief on the grounds that his guilty pleas were not knowing, intelligent, or voluntary, and that the denial of his motion to withdraw his pleas violated his constitutional rights as set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). Attached to his petition were various documents, including one entitled "Supporting Facts," the last page of which cites *Strickland v. Washington*, 466 U.S. 668, 681, 691 (1984).

The district court summarily denied Sanders's habeas petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, without requiring the State to respond. The district court noted that Sanders did not argue that the state appellate court's decision was contrary to, or unreasonably applied, federal law. Instead, Sanders labeled as erroneous the factual determination that his pleas were knowing and voluntary. The district court recognized the state trial court's "thorough decision" on postconviction review, finding that it "fully explained the basis for its factual findings, and the court of appeals likewise fully explained why the evidence supported the [trial] court's findings."

---

[3] Sanders later filed an additional motion for postconviction relief in state court, arguing that his postconviction counsel was constitutionally deficient. That motion is not part of this appeal.

Sanders also did not dispute the evidentiary record, the district court observed. Rather, he only challenged "the findings made by the [state trial] court based on that evidentiary record" without alleging any facts "that suggest the state court's determinations were unreasonable in light of the evidence presented." Given that a state trial court's factual findings are "presumed to be correct" unless rebutted by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), the district court summarily denied Sanders's petition.

On appeal Sanders argues the district court erred in entering a summary denial of his petition. Relief is appropriate, he claims, because his trial counsel was constitutionally ineffective and his guilty pleas were not knowing and voluntary. Sanders requests habeas relief, or at a minimum that we vacate the district court's dismissal of his petition and remand with instructions requiring the State to respond and provide relevant transcripts.[4]

## II

"When reviewing a district court's ruling on a habeas corpus petition, we review the district court's factual findings for clear error and rulings on issues of law *de novo*." *Lee-Kendrick v. Eckstein*, 38 F.4th 581, 585–86 (7th Cir. 2022) (quoting *Stern v. Meisner*, 812 F.3d 606, 609 (7th Cir. 2016)). This standard applies equally to a district court's summary dismissal of a habeas petition under Rule 4 of the Rules Governing Section 2254 Cases. *See Small v. Endicott*, 998 F.2d 411, 414 (7th Cir.

---

[4] We thank Ahmad K. Murrar, Esq. of Foley & Lardner LLP for accepting this appointment and for his representation of Sanders in this appeal.

1993); *see also Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).

Rule 4 provides that a district court "must" summarily dismiss a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." This rule "enables the district court to dismiss a petition summarily, without reviewing the record at all, if it determines that the petition and any attached exhibits either fail to state a claim or are factually frivolous." *Small*, 998 F.2d at 414. In deciding whether a habeas petition must be dismissed under this rule, the district court "need not examine the trial records if two conditions are satisfied: (1) the state court opinions summarize the trial testimony or relevant facts; and (2) the petitioner does not quarrel with that summary and instead contends only that the trier of fact should have reached a different conclusion." *Id.* Dismissal under Rule 4 should be rare and is reserved for petitions that, when taken together with any attached exhibits, seem "extremely unlikely" on their face to have merit. *Dellenbach v. Hanks*, 76 F.3d 820, 823 (7th Cir. 1996).

The district court considered attachments to Sanders's petition, including his handwritten "Supporting Facts," the 2017 state trial court decision, and the 2018 state appellate court's opinion and order. Sanders argues his petition plausibly states two claims: for ineffective assistance of counsel, and that his guilty pleas were not knowing and voluntary.

## A

Sanders contends he presented a plausible claim to the district court that his trial counsel failed to provide effective assistance in two ways. His attorney did not review the

elements of the crime with him, and he did not fully evaluate a defense based on Sanders's mental state at the time of the offense.

The State responds that Sanders's ineffective assistance of counsel claim is not properly before us. First, notwithstanding Sanders's single citation to *Strickland*, his federal habeas petition did not set forth a claim for ineffective assistance of counsel. Second, any such claim is procedurally barred because it was not fairly presented to the Wisconsin Court of Appeals.

We need not decide whether Sanders raised a claim for ineffective assistance of counsel in his § 2254 petition because Sanders did not raise the claim before the Wisconsin Court of Appeals. The claim thus was not preserved for federal habeas review. Under 28 U.S.C. § 2254(b)(1)(A), a petitioner must "exhaust[] the remedies available in the courts of the State" before seeking federal habeas relief. Inherent in this obligation "is the duty to fairly present … federal claims to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Fair presentment, in turn, "requires the petitioner to assert his federal claim through one complete round of state-court review," which "means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025–26.

If a petitioner fails to properly assert a federal claim at each level in the state court system, the claim is procedurally defaulted. *King v. Pfister*, 834 F.3d 808, 815 (7th Cir. 2016). "A procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default *or* he can establish that the denial of relief will result in a miscarriage of justice." *Lewis*, 390 F.3d at

1026 (citations omitted). A miscarriage of justice results only when the petitioner can show that he is "actually innocent of the offense for which he was convicted." *Id.*

Here, the district court had the benefit of reviewing the state appellate court's decision affirming the state trial court dismissal of Sanders's postconviction motions. These state court decisions were included as exhibits to Sanders's habeas petition. Importantly, the decision of the Wisconsin Court of Appeals stated:

> Sanders also argued that he received ineffective assistance of counsel. However, the circuit court found that Sanders' attorney provided effective representation and, in the alternative, that any deficiency in his performance did not prejudice Sanders. Sanders does not appeal this aspect of the circuit court's decision.

Sanders attempts to introduce ambiguity into this language, but there is none. The state appellate court unmistakably ruled that although Sanders had previously raised a claim for ineffective assistance of counsel, he abandoned it in his request to the Wisconsin Court of Appeals.

A review of Sanders's briefs before the Wisconsin Court of Appeals confirms this. His only argument to that court pertained to the knowing and voluntary nature of his guilty pleas. While Sanders's state appellate court briefing is not part of the record before us, his counsel acknowledged during oral argument what our court has long recognized—we may take judicial notice of state court dockets.[5] *520 S. Michigan Ave.*

---

[5] Oral Arg. at 2:27–3:30.

*Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n.14 (7th Cir. 2008). Sanders's counsel responded that his client's state appellate brief used the phrase "ineffective assistance of counsel."[6] But this phrase appears in the brief only in a recitation of the case's procedural history and the issues raised at the *Machner* hearing before the state trial court.

Because Sanders did not raise his claim for ineffective assistance of trial counsel before the Wisconsin Court of Appeals, it is procedurally defaulted. Sanders does not attempt to show cause or prejudice for his default, nor does he attempt to demonstrate that denying relief would result in a miscarriage of justice. So, the district court did not err in summarily dismissing Sanders's habeas petition on his claim for ineffective assistance of counsel.

**B**

Sanders argues next that his guilty pleas were not knowing and voluntary, and that he presented a plausible claim on that front in the district court. There is no dispute that Sanders advanced this claim to the state appellate court, and that the Wisconsin Court of Appeals decided that claim on the merits. So that court's decision is entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA). *See* 28 U.S.C. § 2254(d).

To obtain habeas relief, Sanders must show that the state appellate court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

---

[6] Oral Arg. at 4:02–4:12.

28 U.S.C. § 2254(d)(1)–(2). We presume all factual determinations by a state court are correct unless Sanders rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Powell v. Fuchs*, 4 F.4th 541, 548 (7th Cir. 2021).[7] Although a petition "may disagree with the state court's weighing of certain facts, the highly deferential habeas review does not permit a federal court to conduct its own independent inquiry and reweigh factors as a de novo matter." *Lentz v. Kennedy*, 967 F.3d 675, 690 (7th Cir. 2020). This is a high hurdle to clear, which "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Minnick v. Winkleski*, 15 F.4th 460, 468 (7th Cir. 2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)). Sanders must demonstrate "that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Westray v. Brookhart*, 36 F.4th 737, 746 (7th Cir. 2022) (quoting *Adorno v. Melvin*, 876 F.3d 917, 921 (7th Cir. 2017)).

Sanders does not argue that the decision of the Wisconsin Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law in violation of § 2254(d)(1). And rather than show by clear and convincing

---

[7] Sanders cites *United States ex rel. Jones v. Franzen*, where we stated that we should treat the allegations of a habeas petition as true when the district court summarily dismisses the petition. 676 F.2d 261, 266 (7th Cir. 1982). But *Franzen* predates AEDPA, which states that determinations of factual issues made by a state court "shall be presumed to be correct," without providing an exception for summary dismissals. 28 U.S.C. § 2254(e)(1).

evidence that the district court made unreasonable factual determinations under § 2254(d)(2), Sanders merely repeats the arguments he made before the district court and the state courts. He is unable, however, to present a single fact that was not addressed by either the state trial court or the Wisconsin Court of Appeals, or to explain why their determinations were unreasonable.

For example, Sanders argues his trial counsel's failure to adequately explain the charges resulted in him pleading guilty to charges he did not understand. To support this contention, Sanders points to trial counsel's testimony at the *Machner* hearing that he did not specifically remember reading the complaint to Sanders.

But on postconviction review, the state trial court directly addressed this point. It found that although trial counsel did not have a "specific recollection of actually reading the criminal complaint to Sanders, he credibly testified that it has been his long-standing policy and practice to read through the entire criminal complaint to his clients." To the state trial court, trial counsel's admission that he could recall certain details but not others from the plea hearing five years earlier bolstered his credibility and showed his honesty. Such credibility determinations are "notoriously difficult to overturn under § 2254(d)(2)." *Coleman v. Hardy*, 690 F.3d 811, 817 (7th Cir. 2012). Sanders has not shown why these findings are unreasonable, nor has he pointed to any facts that were overlooked. His belief that the state trial court should have weighed the facts differently is not enough for relief on federal habeas review. The state trial court further observed that the plea questionnaire contains a checked box that reads, "My attorney read the complaint to me."

Sanders next contends that due to his intellectual limitations, the state trial court's recitation of the jury instructions at the plea hearing was insufficient to show that he understood the charges against him. On postconviction review, the state trial court disagreed, concluding that "Sanders did not have intellectual limitations that would have prevented him from understanding the elements of the offense when those elements were read to Sanders by the judge at the plea hearing." Rather, based on Sanders's performance at the *Machner* hearing, the state trial court found him to be a "reasonably intelligent person" with "approximately average intellectual abilities." Sanders was capable of discerning which questions were "dangerous" to his position, and he carefully answered such inquiries by using tactics of evasion, rephrasing, or parsing words. He was even able to correct the prosecuting attorney about Sanders's own testimony from five years prior at the plea hearing, without the aid of the plea hearing transcript. These factors, in conjunction with its credibility determinations, led the state trial court to conclude that "Sanders had the intellectual capability to understand everything that was said at the plea hearing."

Sanders responds that the state trial court improperly assessed his cognitive capabilities as of the plea hearing based on his performance five years later at the *Machner* hearing. He claims he "improved his ability to read and write" during this time, so it "is not unreasonable that Sanders performed better at [the] evidentiary hearing" because he "likely walked into the evidentiary hearing more prepared."

But the state trial court pointed to Sanders's demonstrated intellectual capacity at the 2012 plea hearing, citing three examples where Sanders requested additional clarification. This

substantiated his "cognitive skills and desire to understand the terms of the guilty plea," and showed he "was not blithely answering 'yes' every time he was asked whether he understood something." The court also pointed to the testimony of Sanders's trial counsel, who described Sanders as an "inquisitive" client.

Next, the state trial court referenced one of Sanders's responses to appointed counsel's no-merit report, prepared two years after the plea hearing. Sanders testified he had written the response "with just a little help." Aside from some typographical and grammatical errors, the state trial court found that Sanders's response "la[id] out his factual and legal arguments in a relatively cogent and persuasive manner." "In order to draft the objection," the state trial court reasoned, "Sanders must have read and understood the plea hearing transcript, read the relevant law, read the No-merit report and then distilled all of this information into his objection." Importantly, "Sanders's objection was so persuasive that it convinced the Court of Appeals to reject the No-merit Report and order that a *Machner* hearing be held." This further demonstrated Sanders's cognitive abilities and convinced the state trial court that "Sanders was not being honest when he testified … that he did not understand the elements of the offense when they were explained to him by [the] Judge"—a credibility determination that is entitled to significant deference.

As a last resort, Sanders argues that even if his habeas petition ultimately lacked merit, the district court should not have summarily dismissed it without examining the state court transcripts. But a district court is not required to examine state trial records when "(1) the state court opinions summarize the trial testimony or relevant facts; and (2) the

petitioner does not quarrel with that summary and instead contends only that the trier of fact should have reached a different conclusion." *Small*, 998 F.2d at 414. Here, the state trial court's postconviction opinion is remarkably detailed and well-reasoned, summarizing all the facts relevant to Sanders's knowing and voluntary claim. Even Sanders's counsel at oral argument before us conceded that the state trial court's findings were "very thorough."[8] And notwithstanding Sanders's characterizations to the contrary, he has not quarreled with the state trial court's factual summary, contending only that the court should have drawn different conclusions from the facts. For these reasons, the district court was not required to review the state court transcripts before summarily dismissing Sanders's § 2254 petition.

As for the district court's decision to summarily dismiss under Rule 4, that outcome is the exception not the norm. A summary dismissal should not follow just because the district court concludes that a habeas petition is unlikely to be granted. Rather, the petition must "plainly show" it is "factually frivolous," *Small*, 998 F.2d at 414, and "extremely unlikely" on its face to be meritorious. *Dellenbach*, 76 F.3d at 823. That accurately describes Sanders's petition. He has not identified any facts the state courts overlooked. He also has not shown why any of the state trial court's factual findings were unreasonable. Those findings were fortified with credibility determinations, which are nearly unassailable on habeas review. Even more, the state trial court thoughtfully explained the bases for its conclusions. Thus, the district court was able to assess the merits of the state trial court's postconviction

---

[8] Oral Arg. at 33:30.

work without the need to examine transcripts or for the State to file a response. Sanders does not even attempt to rebut these findings before us.

Given the state trial court's comprehensive postconviction opinion—along with Sanders's inability to show by any metric, let alone by clear and convincing evidence, that the court's findings were incorrect—we conclude that the district court did not err in summarily dismissing Sanders's habeas petition.

*        *        *

For these reasons, we AFFIRM the judgment of the district court.