In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1314
SAKAJUST SCOTT,
 Petitioner-Appellant,
 v.

RANDALL HEPP,
 Respondent-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Eastern District of Wisconsin.
 No. 18-cv-00373 — William C. Griesbach, Judge.
 ____________________

 ARGUED JANUARY 5, 2023 — DECIDED MARCH 9, 2023
 ____________________

 Before FLAUM, ROVNER, and BRENNAN, Circuit Judges.
 FLAUM, Circuit Judge. Sakajust Scott seeks habeas relief,
claiming his attorney provided constitutionally deﬁcient rep-
resentation by failing to move to suppress his confession as
obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966).
The Antiterrorism and Eﬀective Death Penalty Act (AEDPA),
which governs our review of Scott’s appeal, limits our ability
to grant relief. Since the Wisconsin appellate court’s decision,
which upheld Scott’s conviction, was not contrary to or an
2 No. 22-1314

unreasonable application of Supreme Court precedent, we af-
ﬁrm the denial of his habeas petition.
 I. Background
 Scott was arrested at his home around 4:30 P.M. on Novem-
ber 6, 2012. Police suspected he shot and killed Henry Bishop
weeks earlier, while Bishop was begging for money at a gas
station. Scott claims he asked for an attorney during his arrest,
but no questioning occurred at that time. Instead, he was
placed in a squad car, taken to jail, and held in the bullpen.
Approximately four hours later, Scott was taken for an inter-
view. After the detectives read Scott his Miranda rights, he ad-
mitted in a recorded interview to murdering Bishop.
 Four attorneys worked on Scott’s case at different times
leading up to trial. The fourth attorney moved to exclude
Scott’s confession on the basis of intoxication. At the suppres-
sion hearing, Scott testified that, before his arrest, he took a
couple “shots of alcohol, did a couple pills, [and] smoked a
little bit of weed.” The judge denied the suppression motion,
doubting the veracity of Scott’s testimony. As a result, the jury
heard the recorded confession at trial and ultimately con-
victed Scott of murder. Scott was sentenced to life in prison.
 Scott first challenged his conviction in a postconviction
motion, alleging that his fourth trial attorney was ineffective
for not moving to suppress his confession on the theory that,
because he requested an attorney at the time of his arrest, his
confession was obtained in violation of the Fifth Amendment.
The trial court denied the motion without a hearing, and Scott
appealed that decision.
 The appellate court affirmed on the basis that Scott failed
to allege facts demonstrating that he told his trial counsel he
No. 22-1314 3

requested an attorney during his arrest. Missing from his mo-
tion were details about how, when, and which attorney he in-
formed. However, the court affirmed for the “additional and
independent reason” that “[t]he law is currently unclear as to
whether a defendant may effectively invoke the Fifth Amend-
ment right to counsel at a time when [a] custodial interroga-
tion is not imminent or impending.” The court concluded that
an attorney is not required to argue an unsettled point of law
and could not be deficient for failing to do so. Scott appealed
to the Wisconsin Supreme Court, but his petition was denied.
 Represented by new counsel, Scott filed a second postcon-
viction motion, this time claiming his first postconviction
counsel deficiently pleaded his ineffective assistance of coun-
sel claim. Scott pointed to counsel’s failure to marshal facts
showing he informed his trial counsel of his request for an at-
torney. The trial court denied the motion, and the appellate
court affirmed, reasoning that Scott’s claim was premised on
his previously adjudicated claim that his trial counsel was in-
effective. It held Scott was barred from relitigating the issue.
The Wisconsin Supreme Court denied Scott’s petition for re-
view of that decision.
 Scott then pursued federal habeas relief in the U.S. District
Court for the Eastern District of Wisconsin, claiming both his
trial and first postconviction attorneys were ineffective. Ac-
knowledging the confined review dictated by AEDPA, the
district court denied his petition. It explained that the Su-
preme Court has never extended Miranda, 384 U.S. at 436, or
Edwards v. Arizona, 451 U.S. 477 (1981), beyond the context of
a custodial interrogation to permit an accused to request an
attorney “at the time of his arrest so as to cut off questioning
4 No. 22-1314

long before any attempt is even made to question him.” This
appeal ensued.
 II. Discussion
 Our ability to grant a state prisoner’s habeas petition is sig-
nificantly limited by AEDPA. Cullen v. Pinholster, 563 U.S. 170,
181 (2011). The scope of our review is narrow as well. Corral
v. Foster, 4 F.4th 576, 582 (7th Cir. 2021). We review Scott’s ha-
beas petition de novo, Winfield v. Dorethy, 956 F.3d 442, 451
(7th Cir. 2020), with our “focus on the decision of the last state
court to rule on the merits of the petitioner’s claim,” Campbell
v. Smith, 770 F.3d 540, 546 (7th Cir. 2014) (citation and internal
quotation marks omitted). The applicable decision in this case
is the Wisconsin appellate court’s ruling adjudicating Scott’s
first postconviction motion. 1 We review that decision with
considerable deference. Sanders v. Radtke, 48 F.4th 502, 510−11
(7th Cir. 2022).
 A. Standard of Review
 Under AEDPA, habeas relief is only warranted if the state
court’s decision “was contrary to, or involved an unreasona-
ble application of, clearly established Federal law, as deter-
mined by the Supreme Court of the United States.” 28 U.S.C.
§ 2254(d)(1).
 “A state-court decision is contrary to clearly established
federal law if it applies a rule that contradicts the governing
law set forth in [a Supreme Court case], or if it confronts a set

 1 While there is a later decision (the appellate court’s ruling on Scott’s

second postconviction motion), it summarily disposed of Scott’s appeal
and did not address the merits of his claim. As a result, we focus on the
first appellate court decision. See Corral, 4 F.4th at 582.
No. 22-1314 5

of facts that is materially indistinguishable from a decision of
[the Supreme] Court but reaches a different result.” Pruitt v.
Neal, 788 F.3d 248, 263 (7th Cir. 2015) (alterations in original)
(citation and internal quotation marks omitted); see also Berk-
man v. Vanihel, 33 F.4th 937, 947 (7th Cir. 2022).
 The “decision unreasonably applies federal law if it ‘ap-
plies [the Supreme] Court’s precedents to the facts in an ob-
jectively unreasonable manner.’” Pruitt, 788 F.3d at 263 (alter-
ation in original) (quoting Brown v. Payton, 544 U.S. 133, 141
(2005)). Objectively unreasonable in this context does not
mean “merely wrong; even clear error will not suffice.” Id. (ci-
tation and internal quotation marks omitted). Instead, the rul-
ing must contain “an error well understood and compre-
hended in existing law beyond any possibility for fairminded
disagreement.” Id. (citation omitted).
 Yet, “‘[t]here can be no Supreme Court precedent to be
contradicted or unreasonably applied,’ and therefore no ha-
beas relief, when there is no Supreme Court precedent on
point.” Virsnieks v. Smith, 521 F.3d 707, 716 (7th Cir. 2008) (al-
teration in original) (quoting Lockhart v. Chandler, 446 F.3d 721,
724 (7th Cir. 2006)). Consequently, AEDPA presents a “formi-
dable barrier to federal habeas relief” for Scott. Pruitt, 788 F.3d
at 263 (citation omitted).
 B. Contrary to or an Unreasonable Application of
 Strickland
 Scott argues that the appellate court’s decision was both
contrary to and an unreasonable application of Strickland v.
Washington—the seminal case establishing that a criminal de-
fendant’s conviction must be vacated if his attorney’s repre-
sentation “so undermined the proper functioning of the
6 No. 22-1314

adversarial process that the trial cannot be relied on as having
produced a just result.” 466 U.S. 668, 686–87 (1984). Scott does
not dispute that the Wisconsin appellate court appropriately
identified Strickland as the standard for determining
“[w]hether counsel’s performance was deficient and whether
any deficiency was prejudicial.” Instead, he contends that the
court applied Strickland in a contradictory or unreasonable
way by using a per se rule from State v. McMahon, 519 N.W.2d
621 (Wis. Ct. App. 1994), as the basis for rejecting his appeal.
 The rule Scott is concerned with provides that “[c]ounsel
is not required to object and argue a point of law that is un-
settled.” Id. at 628. The McMahon court explained, albeit with-
out citation, that “ineffective assistance of counsel cases
should be limited to situations where the law or duty is clear
such that reasonable counsel should know enough to raise the
issue.” Id.
 Affirming Scott’s conviction, the appellate court cited
McMahon and explained that the law is uncertain concerning
when one may invoke Miranda outside the context of a custo-
dial interrogation. It reasoned that Scott’s counsel thus had no
obligation to seek suppression of his confession based on his
request for an attorney during his arrest four hours prior and
was not constitutionally ineffective for failing to do so. 2 Scott
contends that analysis constitutes application of a per se rule

 2 The court did not address Strickland’s prejudice prong and instead

“rested its analysis on the deficient performance prong;” consequently,
“we confine our analysis to that prong” as well. Minnick v. Winkleski, 15
F.4th 460, 469 (7th Cir. 2021), cert. denied, 142 S. Ct. 1367 (2022). We need
not go further because “failing to prove either [prong] defeats a peti-
tioner’s claim.” Dunn v. Jess, 981 F.3d 582, 591 (7th Cir. 2020); Thurston v.
Vanihel, 39 F.4th 921, 929 (7th Cir. 2022).
No. 22-1314 7

which conflicts with Strickland’s directive that courts examine
the totality of the circumstances to determine the reasonable-
ness of an attorney’s actions. See Kimmelman v. Morrison, 477
U.S. 365, 384 (1986) (“The reasonableness of counsel’s perfor-
mance is to be evaluated from counsel’s perspective at the
time of the alleged error and in light of all the circumstances.”
(citing Strickland, 466 U.S. at 689)). 3
 When reviewing a state prisoner’s habeas petition, the
Supreme Court has cautioned us not to go “astray” by
“reinterpret[ing]” or “recharacteriz[ing] [a state court’s] case-
specific analysis as a ‘categorical rule.’” Dunn v. Reeves, 141 S.
Ct. 2405, 2407, 2412 (2021). Here, although the court cited
McMahon for support, it still “engage[d] in the circumstance-
specific reasonableness inquiry required by Strickland.” Roe v.
Flores-Ortega, 528 U.S. 470, 478 (2000). Review of the court’s
decision shows consideration of Scott’s arguments,
evaluation of the circumstances surrounding his
interrogation, recognition of the information available to his
counsel, and analysis of the development of Fifth
Amendment law, concluding that “[h]is trial attorneys had no
obligation to pursue [an] unsettled theory.” Looking at the
appellate court’s decision as a whole, it performed a case-
specific analysis and “determined that the facts of this case
did not merit relief.” Dunn, 141 S. Ct. at 2412. We are

 3 Scott does not argue that his ability to invoke Miranda at the time he

did—approximately four hours prior to his interview—was clearly estab-
lished. Such an argument would be a nonstarter in light of the Supreme
Court’s clear statement that it “has ‘never held that a person can invoke
his Miranda rights anticipatorily, in a context other than “custodial inter-
rogation.”’” Bobby v. Dixon, 565 U.S. 23, 28 (2011) (quoting McNeil v. Wis-
consin, 501 U.S. 171, 182 n.3 (1991)).
8 No. 22-1314

“confident from context that the court based its analysis of
counsel’s performance on the very circumstances [Scott]
argued were relevant to his claim,” not merely on a per se
rule. Corral, 4 F.4th at 583.
 Turning to the McMahon rule itself, far from being con-
trary to or an unreasonable application of Supreme Court
precedent, many federal courts—including this Circuit—have
endorsed a similar principle. See, e.g., Valenzuela v. United
States, 261 F.3d 694, 700 (7th Cir. 2001) (“[O]ur cases provide
that ‘[t]he Sixth Amendment does not require counsel to fore-
cast changes or advances in the law.’” (second alteration in
original) (quoting Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir.
1993)); Tucker v. United States, 889 F.3d 881, 885 (7th Cir. 2018)
(“[A] failure to anticipate a change or advancement in the law
does not qualify as ineffective assistance.”); Resnick v. United
States, 7 F.4th 611, 623 (7th Cir. 2021) (“[O]ur case law pro-
vides that failure to object to an issue that is not settled law
within the circuit is not unreasonable by defense counsel.”);
cf. Bridges v. United States, 991 F.3d 793, 804 (7th Cir. 2021)
(“Defense attorneys, it is true, are generally not obliged to an-
ticipate changes in the law. Yet there are some circumstances
where they may be obliged to make, or at least to evaluate, an
argument that is sufficiently foreshadowed in existing case
law.” (citation omitted)); United States v. Fields, 565 F.3d 290,
294 (5th Cir. 2009) (“[W]e have repeatedly held that there is
no general duty on the part of defense counsel to anticipate
changes in law.” (citation and internal quotation marks omit-
ted)); United States v. Juliano, 12 F.4th 937, 940 (9th Cir. 2021)
(collecting cases for the proposition that “courts have articu-
lated a rule that ineffective assistance of counsel claims gen-
erally cannot be predicated on counsel’s failure to anticipate
changes in the law”).
No. 22-1314 9

 These cases make clear that a failure to argue a point of
unsettled law, not foreshadowed by existing case law, “is not
enough by itself to demonstrate deficient performance.” Min-
nick, 15 F.4th at 470 (emphasis added); cf. Harris v. United
States, 13 F.4th 623, 629−31 (7th Cir. 2021). This is “consistent
with Strickland’s presumption of deference to attorneys.” Min-
nick, 15 F.4th at 470; see also Strickland, 466 U.S. at 689 (rejecting
“rules that … restrict the wide latitude counsel must have”).
 The fact that the Wisconsin “court’s reasoning largely fol-
low[ed] circuit precedent” is additional, “persuasive evidence
[that] the state court did not improperly apply the Supreme
Court caselaw.” Minnick, 15 F.4th at 470; see also Corral, 4 F.4th
at 584 (explaining that a state court does not “contradict[]
Strickland” if it applies a state court decision that is in line with
“clearly established federal law”); Virsnieks, 521 F.3d at 716
(indicating that “the decisions of the courts of appeals can
guide us in determining what constitutes an unreasonable ap-
plication of” Supreme Court law (citation and internal quota-
tion marks omitted)). Furthermore, “habeas corpus is a guard
against extreme malfunctions in the state criminal justice sys-
tems, not a substitute for ordinary error correction through
appeal.” Sanders, 48 F.4th at 511 (emphasis added) (citation
omitted); see also Corral, 4 F.4th at 582 (noting that when re-
viewing ineffective assistance of counsel claims under
AEDPA, “we owe deference to both [the petitioner’s] counsel
and the state court” (citation omitted)).
 That doubly deferential review motivated our reasoning
in Minnick, where we held that a Wisconsin court’s decision
was not contrary to Strickland despite its holding that “[the
attorney’s] misjudgment of [a] likely sentence [was] not a ba-
sis for an ineffective assistance of counsel claim.” Minnick, 15
10 No. 22-1314

F.4th at 465. The more comprehensive recitation of the rule
would have been “that ‘a mistaken prediction is not enough
in itself to show deficient performance.’” Id. at 469 (quoting
United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996)). How-
ever, we held that the Wisconsin court had not applied a per
se rule or otherwise contravened Supreme Court precedent
because, on the whole, its “decision c[ould] reasonably be in-
terpreted as describing a similar standard” to one this Court
previously endorsed. Id.
 The same is true of the appellate court decision in this case.
The court could have been more precise by emphasizing its
focus on reasonableness when evaluating counsel’s perfor-
mance and explaining that, given the circumstances present
in this case, Scott’s counsel’s failure to argue unsettled law did
not constitute ineffective assistance. However, a review of the
appellate court’s analysis reveals application of a standard
quite similar to one consistently applied by this Court, see, e.g.,
Resnick, 7 F.4th at 623, and, given the circumstances present,
no further analysis was necessary, see Minnick, 15 F.4th at 469
(explaining the state court’s incomplete recitation of a stand-
ard was unobjectionable since “[n]othing in [the] case re-
quired” the court to delve into more detail).
 The final blow to Scott’s petition is the dearth of Supreme
Court precedent addressing whether an attorney can be
deemed ineffective for failing to make an argument based on
unsettled law; the Supreme Court has never addressed the is-
sue. That alone forestalls habeas relief, as there was no clearly
established federal law for the Wisconsin court to contradict
or unreasonably apply. See Harrington v. Richter, 562 U.S. 86,
101 (2011) (“[I]t is not an unreasonable application of clearly
established Federal law for a state court to decline to apply a
No. 22-1314 11

specific legal rule that has not been squarely established by
this Court.” (alteration in original) (quoting Knowles v. Mirza-
yance, 556 U.S. 111, 122 (2009)); Virsnieks, 521 F.3d at 716 (hold-
ing that because the Supreme Court had “not delimited com-
prehensively” the circumstances under which a general rule
applied, there was “no Supreme Court precedent on point”
and thus there could be “no habeas relief”).
 In sum, Supreme Court precedent constructs a high bar
before a counsel’s representation will be questioned, requir-
ing only “reasonableness under prevailing professional
norms.” Strickland, 466 U.S. at 688; see also Flores-Ortega, 548
U.S. at 479−80. AEDPA raises that bar even higher. Consider-
ing the Wisconsin court’s decision as a whole, we cannot con-
clude that it contradicted Supreme Court precedent or ap-
plied it in an “objectively unreasonable” manner, “beyond
any possibility for fairminded disagreement.” Pruitt, 788 F.3d
at 263. In light of this, the district court was correct to deny
the petition.
 III. Conclusion
 For the reasons explained, we AFFIRM the judgment of the
district court denying Scott’s petition for habeas relief.