In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-1266

LEON CARTER,

*Petitioner-Appellant,*

*v.*

LIZZIE TEGELS, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:17-cv-01497-PP — **Pamela Pepper**, *Chief Judge.*

ARGUED JANUARY 29, 2025 — DECIDED APRIL 24, 2025

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* The State of Wisconsin charged Leon Carter with sexual assault, strangulation, and kidnapping. At trial, during deliberations, the jury sent a note with a question to the judge. But the bailiff answered the question without first relaying it to the judge. The jury found Carter guilty on all counts. When the parties learned of the bailiff's response, Carter moved for a mistrial, which was denied.

On direct appeal Carter's appellate counsel filed a no-merit brief that summarized the record, highlighted legal arguments, and explained why they lacked arguable merit. The brief discussed why any legal arguments stemming from the bailiff's action would have been frivolous. The Wisconsin Court of Appeals agreed and said so in a footnote in its opinion. The Wisconsin Supreme Court denied certiorari.

On federal habeas review, Carter asserts two violations. First, he submits the state appellate court denied him a meaningful appeal under *Anders v. California*, 386 U.S. 738 (1967). Second, he argues the state trial judge erred by not holding a hearing to investigate jury intrusion, contrary to *Remmer v. United States*, 347 U.S. 227 (1954). The district court rejected the former contention and did not consider the latter, so Carter appeals to this court.

We conclude that Carter's *Anders* claim fails. The Constitution does not promise a defendant the right to exhaustive analysis in the disposition of his claims. And Carter's *Remmer* claim cannot clear the high hurdle set by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. For these reasons, we affirm the district court.

## I. Background

Around 1996, Ms. Smith (a pseudonym) and Carter began dating. According to the amended criminal complaint, during their years-long relationship, Carter saw Smith as "property" and "severely physically, sexually, and psychologically abused" her. For his acts, in 2011 Carter was charged with six crimes: three counts of second-degree sexual assault through the use of force; second-degree sexual assault causing injury

to a sex organ; kidnapping; and strangulation.[1] After a trial in 2012, a jury found him guilty on all counts.

After the jury returned its verdict, the judge raised an issue with the parties. Earlier that day, the jury had given a note to the bailiff to deliver to the judge which read: "What happens if we do not unanimously agree on one of the six counts?" Rather than giving the question to the judge to answer, the bailiff responded, "you need to just work and reach a unanimous verdict." Carter moved for a mistrial. The judge denied the motion, explaining that because she would have given the same instruction, the verdict retained its integrity.

Carter filed a notice of appeal challenging several issues from his trial. A few months later his appellate counsel concluded those arguments were frivolous, so he filed a no-merit report, also called an "*Anders* brief." *See* WIS. STAT. § 809.32. In the first 30 pages, the brief detailed the facts and proceedings in the case. It then discussed several legal issues and explained why each issue lacked merit. It also included an assessment of why arguments about the bailiff's communication with the jury lacked merit. Carter filed a brief in response to his counsel's no-merit report, as he may. *Id*. § 809.32(1)(e). The state appellate court then ordered counsel to file a supplemental report with additional analysis on two other issues. Appellate counsel filed a 14-page supplemental brief.

The Wisconsin Court of Appeals affirmed Carter's convictions. That court "independently reviewed the record, the no-merit report, the supplemental no-merit report, and Carter's

---

[1] WIS. STAT. §§ 940.225(2)(a)–(b), 940.31(1)(b), 940.235(1).

response." It concluded "no issue of arguable merit could be pursued on appeal." (cleaned up).

In a footnote, the state appellate court stated it would not examine every issue in depth, including claims stemming from the bailiff's communication with the jury:

> This court will not attempt to address every is-
> sue that arose in this case. The thirty-nine page
> no-merit report and the twelve-page supple-
> mental no-merit report provide an exhaustive
> summary of the numerous motions and rulings
> that occurred before and during trial. As noted,
> we agree with counsel's analysis and conclusion
> that none of the issues identified presents an is-
> sue of arguable merit.

*State v. Carter*, No. 2014AP1459–CRNM, 2015 WL 13173161, at *2 n.6 (Wis. Ct. App. Nov. 5, 2015).

Carter petitioned the Wisconsin Supreme Court for certi-orari review in 2015. For the first time, he argued the Wisconsin Court of Appeals denied him a meaningful first appeal under *Anders*. He believed his appeal of the mistrial motion based on the bailiff's statement had merit. So, the state appellate court's contrary conclusion violated *Anders*. Both the Wisconsin Supreme Court and the Supreme Court of the United States denied review.

Carter then pursued federal habeas review. In his petition, he again claimed the Wisconsin Court of Appeals denied him an effective appeal under *Anders*. Carter's habeas brief

supporting his petition argued the state trial court violated *Remmer*.[2]

The district court denied habeas relief. *Carter v. Tegels*, No. 17-cv-1497, 2023 WL 129790, at *14 (E.D. Wis. Jan. 9, 2023). Applying AEDPA's deferential review, the district court held that the Wisconsin Court of Appeals did not violate Carter's right to an effective appeal. *Id.* at *12–14. That the state appellate court had read over 50 pages of briefing and reviewed a record spanning hundreds of pages led the district court to conclude that the Wisconsin Court of Appeals did not merely "rubber-stamp" the conclusions in the no-merit report. *Id.* at *14.

The district court did not analyze Carter's *Remmer* claim. It mentioned the case but only when reciting the parties' arguments in their briefs. *Id.* at *10–11. The court also declined to grant Carter a certificate of appealability, a prerequisite for an appeal. *Id.* at *14; 28 U.S.C. § 2253(c). But this court granted Carter's request for such a certificate on five issues: (1) whether the trial court violated *Remmer*; (2) whether the

---

[2] Carter first argued a violation of *Remmer* in that brief, and the State responded to his contention. We assume without deciding that the claim relates back. *See Mayle v. Felix*, 545 U.S. 644, 664 (2005). Relation back was not argued below, so we have chosen not to address it. *See Wood v. Milyard*, 566 U.S. 463, 473 (2012) ("[C]ourts of appeals … have the authority—though not the obligation—to raise a forfeited timeliness defense on their own initiative.").

The State offered a defense to the *Remmer* claim in its opposition brief in the district court. Like relation back, we assume without deciding that Carter's *Remmer* claim was properly presented to that court. *See McGhee v. Watson*, 900 F.3d 849, 853 (7th Cir. 2018); *see also McDowell v. Lemke*, 737 F.3d 476, 481 (7th Cir. 2013).

Wisconsin Court of Appeals violated *Anders*; (3) whether the *Remmer* claim was properly presented to the district court; (4) whether the bailiff's statement was presumptively prejudicial under *Remmer*; and (5) whether the standard in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), was met.

## II. Carter's *Anders* claim

### A. Standard of review

Carter is a state prisoner, so we first decide whether a state court has resolved his *Anders* claim. If so, we review the claim with deference under AEDPA. 28 U.S.C. § 2254(d)(1). If not, we review the claim without AEDPA's deferential standard. *Cone v. Bell*, 556 U.S. 449, 472 (2009).

The Wisconsin Supreme Court denied certiorari on Carter's *Anders* claim. A certiorari denial is typically not an adjudication on the merits. *Brown v. Davenport*, 596 U.S. 118, 142 (2022). This is because the court's review is discretionary. *See* WIS. STAT. § 809.62(1r). Often, when faced with a certiorari denial from a state supreme court, the federal habeas court "look[s] through" to the "last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

In Carter's certiorari petition to the Wisconsin Supreme Court, he argued for the first time that the Wisconsin Court of Appeals violated *Anders*. He could make that argument only after the state appellate court had issued its opinion. This means that when we "look through" the state supreme court's certiorari denial, there is nothing to see, as it was the state appellate court's ruling that allegedly denied him an effective appeal. So, we review Carter's *Anders* argument without AEDPA's deferential standard. We review the district court's

decision de novo. *Roalson v. Noble*, 116 F.4th 661, 665 (7th Cir. 2024).

AEDPA's deferential review may apply under similar circumstances. A state prisoner must raise each claim through "one complete round of state court review," meaning the prisoner argued the claim "at each level of state court review." *Mata v. Baker*, 74 F.4th 480, 488 (7th Cir. 2023) (quoting *Smith v. Gaetz*, 565 F.3d 346, 351–52 (7th Cir. 2009)). This is so state courts have a "fair opportunity" to resolve a state prisoner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Yet Carter's argument that the state appellate court's decision violated *Anders* was not presented to that court. He did not raise the claim at each level in the state court system, so it was not exhausted. Carter could have conceivably exhausted his *Anders* claim a few ways. He could have filed a motion for reconsideration in the Wisconsin Court of Appeals. Or he could have completed a round of state postconviction litigation. A decision resulting from either of those paths that "adjudicated" Carter's claim "on the merits" would mean that AEDPA's deferential review would apply to his claim. 28 U.S.C. § 2254(d). That said, at oral argument before us, the State waived the exhaustion defense.[3] *See* 28 U.S.C. § 2254(b)(3). For these reasons, AEDPA's deferential review does not apply because Carter's *Anders* claim was not adjudicated "on the merits."

## B. The merits of Carter's *Anders* claim

In *Anders*, an indigent defendant asked his appellate counsel to appeal his case. 386 U.S. at 739. Counsel, rather than

---

[3] Oral Argument at 15:10–15:50, 17:37–17:50.

filing a brief, wrote a letter to the court stating that he concluded the appeal had no merit. *Id.* at 739–40. The Supreme Court said more is required: Counsel must "conscientious[ly] examin[e]" the case and explain why the appeal is frivolous. *Id.* at 744. Judges have a duty, too. "After a full examination of all the proceedings," the court must "decide whether the case is wholly frivolous." *Id.*

Later, in *Pennsylvania v. Finley*, the Court explained that *Anders* is a prophylactic measure but is not "an independent constitutional command." 481 U.S. 551, 554–55 (1987). Then, *Smith v. Robbins* expounded more on *Anders*'s standard. 528 U.S. 259, 273–76 (2000). *Robbins* instructs that to comply with *Anders*, a state's procedure must "reasonably ensure[] that an indigent's appeal will be resolved in a way that is related to the merit of that appeal." *Id.* at 278–79. *Robbins* also teaches that one indication a state's no-merit procedure passes constitutional muster is if the state courts must "find the appeal … lacking in arguable issues, which is to say, frivolous." *Id.* at 280.

Carter argues to us that the Wisconsin Court of Appeals failed to follow *Anders*.[4] The state appellate court gave his *Remmer* claim short shrift, he contends, because it was resolved in a footnote. Carter also takes issue with that court's conclusion that his claims "lack[ed] arguable merit." Instead, he argues, *Anders* requires confirming that his claims are "frivolous."

---

[4] Carter was appointed counsel in our court. We thank George Burnett, Esq. for his excellent advocacy and the Law Firm of Conway, Olejniczak & Jerry, S.C. for their diligent efforts on behalf of Carter.

We conclude that the Wisconsin Court of Appeals acted in accordance with *Anders.* It "independently reviewed" the record (hundreds of pages), the *Anders* brief, the supplemental brief, and Carter's response brief (together exceeding 50 pages). The state appellate court also cited *Anders*, recognizing its constitutional obligation. Though some of Carter's claims were resolved in a footnote, the Wisconsin Court of Appeals agreed with the analysis in the no-merit brief. It defies good sense to force state courts to echo the analysis from a no-merit brief when they find that analysis persuasive. Together, this establishes that Carter's appeal was "adequate and effective" and given serious consideration, satisfying *Anders*. The district court correctly concluded the same. *Carter*, 2023 WL 129790, at *12–14.

Further, the *Anders* brief submitted by appellate counsel summarized the facts and proceedings in the first 30 pages. This recitation "ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case." *Robbins*, 528 U.S. at 281. The Wisconsin Court of Appeals examined the brief's summary for arguable issues. So a "trained legal eye" examined the record and assisted the state appellate court's independent evaluation. *Id.*

As Carter sees it, the Fourteenth Amendment compels the state appellate court to write more than a footnote. But "federal courts have no authority to impose mandatory opinion-writing standards on state courts." *Johnson v. Williams*, 568 U.S. 289, 300 (2013). "The caseloads shouldered by many state appellate courts are very heavy, and the opinions issued by these courts must be read with that factor in mind." *Id.* (footnote omitted). *Harrington v. Richter* also tells us that state

courts need not append a statement of reasons to their decisions. 562 U.S. 86, 99 (2011). And Carter's request for detailed analysis is not sourced in the Constitution's text. If anything, federalism commands respecting how state courts decide their cases. *Id.* Our habeas review is qualified to "extreme malfunctions in the state criminal justice systems." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). *Anders*, *Robbins*, and *Richter* read together foreclose Carter's claim.

Nor is the Wisconsin Court of Appeals limited to the magic word "frivolous," as Carter submits. True, a court cannot say a defendant's claim is "unlikely to prevail on appeal." *Robbins*, 528 U.S. at 279. But *Robbins* also tells courts it is permissible to determine that a claim is "lacking in arguable issues, which is to say, frivolous." *Id*. at 280. That is what the state appellate concluded here: "there is no issue of arguable merit that could be pursued on appeal."

Relatedly, Carter submits the Wisconsin Court of Appeals violated *Anders* because his *Remmer* claim has merit. *Anders* tells courts that, when presented with a no-merit brief, they must review the briefs and the record and independently conclude the claims are frivolous. *See McCoy v. Ct. of Appeals of Wis. Dist. 1*, 486 U.S. 429, 442 (1988). For a procedural challenge under *Anders*, a defendant should argue that the court neglected those duties. That is, such a claim must challenge the court's *procedures*.

Carter, however, disputes the state appellate court's *decision*. By arguing that his *Remmer* claim has merit, Carter disagrees with that court's contrary conclusion. That is not an *Anders* procedural challenge. If Carter believes the Wisconsin Court of Appeals wrongly resolved his *Remmer* claim, that

conclusion should be challenged under 28 U.S.C. § 2254(d)(1) as "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law."

Carter also urges us to review his appellate counsel's *Anders* brief. To Carter, the state appellate court adopted the reasoning in that brief, so to assess that court's conclusion we must review the brief's legal analysis. But that does not follow. Carter's habeas brief asserted that the state appellate court fell short under *Anders*. Arguing that "the state appellate court violated *Anders*" is different from claiming "my attorney's brief violated *Anders*." As this court has held, "separate and independent" claims must be pleaded distinctly. *McGhee*, 900 F.3d at 853. Courts look to what is "*actually* raised." *Id*. Here, that was a violation by the state appellate court, not by his attorney.

The district court said as well that Carter "has not argued that [his appellate counsel] violated *Anders*." *Carter*, 2023 WL 129790, at *13. Earlier, the district court also told Carter he "must confine his future arguments to the question of whether the state court denied him his Fourteenth Amendment right to a meaningful appeal by accepting and adopting the no-merit brief," even though "the petitioner believes his appellate lawyer should have withdrawn—or perhaps not filed—the no-merit brief." *Carter v. Foster*, No. 17-cv-1497, 2019 WL 1326907, at *3 (E.D. Wis. Mar. 25, 2019). The certificate of appealability framed Carter's claim in the same way.[5]

---

[5] The certificate of appealability did not mention the no-merit brief. One issue it asked the parties to address was: "whether the state appellate court violated Carter's constitutional rights by concluding that his direct appeal presented no issue of arguable merit and summarily affirming … ."

An ineffective assistance of counsel claim is another way for a defendant to challenge his attorney's no-merit report. *Robbins*, 528 U.S. at 283–84; *see also Morris v. Bartow*, 832 F.3d 705, 709–10 (7th Cir. 2016) (analyzing attorney's *Anders* brief for ineffective assistance of counsel). So, we do not evaluate his attorney's *Anders* brief. This remains true even though we construe his petition liberally because he is pro se. *McGhee*, 900 F.3d at 853.

In sum, the Wisconsin Court of Appeals followed *Anders* and *Robbins* when adjudicating Carter's claims.

### III. Carter's *Remmer* claim

Carter next claims that after learning of the bailiff's communication with the jury, the state trial judge contravened *Remmer* by not presuming the bailiff's statement was prejudicial and by failing to conduct a post-verdict hearing.[6] If a state court has adjudicated the merits of this *Remmer* claim, AEDPA's deferential review applies. 28 U.S.C. § 2254(d). In its *Anders* review, the Wisconsin Court of Appeals concluded that Carter's *Remmer* claim lacked arguable merit. So, that claim was "adjudicated on the merits," meaning AEDPA's deferential review applies. *Id.*

We comment on one aspect of Carter's *Remmer* claim, but we conclude that AEDPA forecloses that claim.

---

[6] Carter arguably procedurally defaulted his *Remmer* claim. A prisoner must argue all operative facts and legal principles to the state courts, *Nichols v. Wiersma*, 108 F.4th 545, 560 (7th Cir. 2024), but Carter did not mention *Remmer* to the state courts. Before us, though, the state waived its procedural default defense on this claim. *See* Oral Argument at 25:40–25:54.

### A. *Remmer* as a constitutional holding

Title 28 U.S.C. § 2254(a) requires that a state prisoner be "in custody in violation of the Constitution or laws or treaties of the United States." Several Justices recently pointed out that it is not clear that *Remmer* establishes a constitutional right. *Shoop v. Cunningham*, 143 S. Ct. 37, 42 (2022) (Thomas, J., dissenting from denial of cert., joined by Alito and Gorsuch, JJ.) We take the time now to examine the question.

In *Remmer* an outsider tried to bribe a juror, and though the FBI investigated, the trial court failed to alert the defendant and hold a hearing. 347 U.S. at 228. *Remmer* held that some forms of "communication, contact, or tampering" with the jury are presumptively prejudicial. *Id.* at 229. If they occur, the judge must hold a hearing to require that the government show why the intrusion was harmless. *Id.* So, the Court remanded with directions to hold an evidentiary hearing. *Id.* at 230.

*Remmer* does not use the words "Constitution," "constitutional," or "due process." Neither did its follow-up case. *Remmer v. United States*, 350 U.S. 377 (1956). Nor did the only two cases that *Remmer* relies on for its rule. *Remmer*, 347 U.S. at 227 (first citing *Mattox v. United States*, 146 U.S. 140 (1892); and then citing *Wheaton v. United States*, 133 F.2d 522, 527 (8th Cir. 1943)). "One could just as naturally—perhaps more naturally—read *Remmer* as a case about new-trial motion practice under the Federal Rules of Criminal Procedure than as one about the requirements of constitutional due process." *Shoop*, 143 S. Ct. at 42 (Thomas, J., dissenting from denial of cert.). Or it could be an evidentiary rule. Before the Federal Rules of Evidence were enacted, courts often adopted common-law rules and fashioned

exceptions. *See, e.g., United States v. Benally*, 546 F.3d 1230, 1233 (10th Cir. 2008); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1155 (D.C. Cir. 2006) (Sentelle, J., concurring). Per some of the Justices, a "rigorous § 2254(d)(1) analysis, therefore, likely would take no account of *Remmer* at all." *Shoop*, 143 S. Ct. at 42.

To be sure, the Court has come close to describing *Remmer* as a constitutional holding. In *Smith v. Phillips*, the Court said, "[d]ue process means … a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* and held in this case." 455 U.S. 209, 217 (1982).

Still, *Phillips* is not about what due process requires; it is about what due process does not require. The Court in *Phillips* reasoned that a post-trial hearing to examine jury intrusions, like that described in *Remmer*, is an adequate remedy in federal court. *Id.* at 218. So, it is also an adequate remedy in state court because the Due Process Clause does not require more from state courts than federal courts. *Id*. *Phillips* did not hold that due process mandates *Remmer*'s holding on state courts, but rather that due process does not require state court hearings to exceed what is permissible in federal court, namely, a *Remmer* hearing. *Id; see also Shoop*, 143 S. Ct. at 42 n.5. (Thomas, J., dissenting from denial of cert.).

In *Dietz v. Bouldin*, the Court hinted that *Remmer* could be a constitutional holding: "the guarantee of an impartial jury … is vital to the fair administration of justice. This Court's precedents implementing this guarantee have noted various external influences that can taint a juror. *E.g., Remmer v. United States* … ." 579 U.S. 40, 48 (2016). Contextual clues in

*United States v. Olano* suggest the same. 507 U.S. 725, 738–39 (1993).[7] But in *Tanner v. United States*, the Court deemed *Remmer* an exception "to the common-law rule" which prohibits "admitting juror testimony to impeach a verdict." 483 U.S. 107, 117 (1987).

The Supreme Court usually speaks in a different manner when it recognizes a constitutional right. In *Anders*, the Court described the right as the "constitutional requirement of substantial equality and fair process." 386 U.S. at 744. Consider too how the Court characterized the right to an impartial jury: "It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988). And in *Strickland v. Washington*, it was "the constitutional requirement of effective assistance." 466 U.S. 668, 686 (1984).

The language in these cases stands in contrast to how the Supreme Court has described *Remmer*, as well as *Remmer* itself. The Court has not unequivocally held that *Remmer* is a constitutional holding, and *Remmer* offers no reason to suggest it is constitutionally compelled. AEDPA requires

---

[7] But that section of *Olano* is dicta, as the Court said, "the issue here is whether the alternates' presence sufficed to establish remedial authority under Rule 52(b), not whether it violated the Sixth Amendment or Due Process Clause." *Id.* at 739.

The same is true with *Rushen v. Spain,* 464 U.S. 114 (1983) (per curiam). That case seemed to characterize *Remmer* as constitutional, but that occurred in dicta, as in *Rushen* the Court expressly said the trial error was not a constitutional holding. *Id.* at 117 n.2.

Recall, AEDPA mandates that federal courts consider only holdings. *Richter*, 562 U.S. at 100; *see also Shoop*, 143 S. Ct. at 42 n.5 (Thomas, J., dissenting from denial of cert.).

precision on this question; it is a prerequisite to habeas relief on all *Remmer* claims, after all.

When asked about this issue at oral argument, the State agreed *Remmer* could be seen as not constitutionally compelled, but the State did not take a firm position.[8] Our circuit has held that *Remmer* is constitutional. *See Hall v. Zenk*, 692 F.3d 793, 803 (7th Cir. 2012); *Oswald v. Bertrand*, 374 F.3d 475, 477–78 (7th Cir. 2004). But our court's law conflicts with that of another circuit on this question. *See Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999) ("We view the *Remmer* presumption as a rule of federal criminal procedure, rather than a rule of federal constitutional law."); *see also United States v. Briscoe*, No. 23-3109, 2025 WL 1013389, at *3 (10th Cir. Apr. 2, 2025). We see this as a question for resolution by the Supreme Court.

## B. The merits of Carter's *Remmer* claim

Under the applicable standard of review, we are to consider whether the bailiff's communication with the jury was presumptively prejudicial under *Remmer*. We look to that case and precedent interpreting it from the Supreme Court and this court.

As established above, Carter's *Remmer* claim is governed by AEDPA's deferential review. To succeed, Carter must show that the Wisconsin Court of Appeals decision—that his *Remmer* claim lacks arguable merit—was "contrary to, or involved an unreasonable application of, clearly established

---

[8] Oral Argument at 24:33–24:59 ("[*Remmer*] doesn't really articulate a constitutional claim. It articulates a best practice in a way … I don't want to say that the state of Wisconsin has a formal opinion on that at this point.").

Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

We start with what the applicable "Federal law" (here, *Remmer*) "clearly establish[es]." *Id.* If no Supreme Court case "squarely addresses the issue" there is no "clearly established" law that controls. *Wright v. Van Patten*, 552 U.S. 120, 125 (2008) (per curiam) (reversing this court). That means we cannot extend a Supreme Court case's rationale under the guise of applying existing law. *White v. Woodall*, 572 U.S. 415, 426 (2014). At bottom, "courts must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." *Id.* at 427 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

The Court has said, "[g]eneral legal principles can constitute clearly established law." *Andrew v. White*, 145 S. Ct. 75, 82 (2025) (per curiam). Recall in *Remmer* that the juror was offered a bribe, resulting in an FBI investigation. 347 U.S. at 228. The Court concluded that the district court should have conducted a hearing because "tampering directly or indirectly[]with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." *Id.* at 229. But "obvious" is not a generally applicable legal principle.

The only other window into the Court's reasoning in *Remmer* is that a hearing is required "on information *such as was received in this case*." *Id.* at 229–30 (emphasis added). This language suggests we should compare our case's facts with *Remmer*'s. *See Whitehead v. Cowan*, 263 F.3d 708, 722–25 (7th Cir. 2001) (contrasting *Remmer*'s facts); *see also Hall*, 692 F.3d at 804. So, in keeping with these rules, we consider whether Carter's case presents an analogy to the facts in *Remmer* but without

requiring "an identical fact pattern." *Woodall*, 572 U.S. at 427 (quoting *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)).

Courts have gone to great lengths to craft an applicable rule for when *Remmer*'s presumption of prejudice applies. *See Hall*, 692 F.3d at 803 ("[T]here has been much debate" on "when the *Remmer* presumption ought to be employed."). To extract a general rule from *Remmer* would frame its holding at a "high level of generality," something the Court has proscribed. *Nevada v. Jackson*, 569 U.S. 505, 512 (2013). But at the same time, "an identical fact pattern" is not required "before a legal rule must be applied." *Woodall*, 572 U.S. at 426.

Complicating our work is that the Supreme Court has not decided a *Remmer* "presumption of prejudice" case since that decision in 1954. Left with just *Remmer*'s terse reasoning and the Court's habeas cases, lawful *Remmer* claims under AEDPA appear to succeed only with facts similar to those in *Remmer*. As has been observed, "as to the Supreme Court's own precedents, the facts of *Remmer* itself remain the only source of guidance as to the showing necessary to mandate a *Remmer* hearing." *Cunningham v. Shoop*, 23 F.4th 636, 681 (6th Cir. 2022) (Kethledge, J., concurring in the judgment in part and dissenting in part), *cert. denied*, 143 S. Ct. 37 (2022).

With these strictures, we evaluate the merits of Carter's *Remmer* claim, considering the nature of the alleged violation, Supreme Court precedent, and our court's law.

First, the bailiff's response to the jury—a procedural instruction—did not introduce new evidence or suggest forbidden inferences. As the state trial judge observed, if the question had been presented to her before the bailiff answered the jury, the judge would have given the same

instruction. And unlike the bribe and FBI investigation in *Remmer*, the communication likely did not engender a feeling that the bailiff was "looking over" the juror's "shoulder," nor was it "bound to impress the juror … unduly." *Remmer*, 347 U.S. at 229. Further, two critical facts for the Court in *Remmer* were the attempted bribery and an FBI investigation. *Id*. at 228. Nothing like that occurred here. "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *Woodall*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). The bailiff's communication with the jury here is not the kind of intrusion that *Remmer* "clearly established" is presumptively prejudicial.

Second, we consider Supreme Court precedent interpreting *Remmer*. While *Smith v. Phillips* comes to mind, the Court in *Williams v. Taylor* emphasized that "clearly established" under AEDPA refers only to holdings. 529 U.S. 362, 412 (2000). In *Phillips*, the state trial court held a hearing, so the Court was not asked to decide whether the jury intrusion there required a hearing. 455 U.S. at 213. So, to apply *Phillips* would be to rely on what the Court has forbidden—something outside a case's "governing legal principle." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). For context, at times this court has applied the facts of *Phillips*, but at other times has not. *Compare Hall*, 692 F.3d at 804 (contrasting the facts in *Phillips*), *with Whitehead*, 263 F.3d at 722–23, 725 (citing *Phillips* but not comparing its facts). In any event, in *Phillips*, "the potential bias of a juror was wholly unrelated to the *Phillips* trial itself, but rather involved a relationship between a juror and the prosecutor's office." *Hall*, 692 U.S. at 804. Here, the intrusion, a question from the jury about the unanimity requirement, related to the trial itself. So even

if *Phillips* could be applied, its "squarely established" holding does not extend to the facts at hand. *Woodall*, 572 U.S. at 427.

Third, we turn to our circuit's precedent. But the Supreme Court has delineated what can be considered. Cases decided on direct appeal cannot be applied. *Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam). Nor can we apply pre-AEDPA cases. *Parker v. Matthews*, 567 U.S. 37, 49 (2012) (per curiam). We may look only "to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam). Said differently: if this court has held that a general principle is "clearly established" by the Supreme Court, we can consider it. But even then, the Court has encouraged circuits to look critically at such precedent if it "bears scant resemblance" to the rule laid down by the Court. *Parker*, 567 U.S. at 49.

Given these requirements, this court's principal case is *Hall*, 692 F.3d at 804. There, a jury was empaneled for Hall's murder trial. *Id.* at 796. A juror's son was incarcerated at the same facility as the defendant. *Id.* During the trial, that juror "overheard his wife tell another family member that their son and several other members of the cell block no longer believed Hall to be innocent." *Id.* The jury found the defendant guilty, and the judge denied Hall's motion to depose all members of the jury. *Id.* At a later evidentiary hearing about the jury intrusion, the state court did not apply *Remmer*'s presumption of prejudice. *Id.* at 796–97. On federal habeas review, the defendant alleged the judge's refusal to do so violated *Remmer*. *Id.* at 797.

*Hall* set a rule for our circuit. "[W]hat seems to be 'clearly established' is that federal constitutional law maintains a

presumption of prejudice in at least some intrusion cases." *Id.* at 803 (quoting 28 U.S.C. § 2254(d)(1)). If the jury intrusion "had a great impact on an average juror's deliberation," then the contact is presumptively prejudicial, and a hearing is necessary. *Id.* at 804.[9] *Hall*'s rule sets what *Remmer* clearly establishes.

We then ask whether the Wisconsin Court of Appeals unreasonably applied *Hall*'s rule to Carter's case under 28 U.S.C. § 2254(d)(1). *See Andrew*, 145 S. Ct. at 83. That application must have been so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada*, 569 U.S. at 508–09 (quoting *Richter*, 562 U.S. at 102). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

We conclude that a fairminded jurist could agree that the bailiff's response to the jury did not have a "great impact on an average juror's deliberation." The state trial court transcript relays that the bailiff gave a procedural instruction and

---

[9] Another case merits brief discussion. This court held in *Wisehart v. Davis* that *Remmer* "clearly establishes" that "the extraneous communication to the juror must be *of a character* that creates a reasonable suspicion that further inquiry is necessary to determine whether the defendant was deprived of his right to an impartial jury." 408 F.3d 321, 326 (7th Cir. 2005) (emphasis added).

*Wisehart* did not define the phrase "of a character." It could mean an intrusion that "contaminate[s] the jury's deliberations." *Id.* The Supreme Court has directed the circuits to raise their eyebrows at caselaw that derives a "highly generalized standard" that "bear[s] scant resemblance" to the Court's precedent. *Parker*, 567 U.S. at 49. Following the Court's direction, the phrase "of a character" is too general to apply here.

did not try to convince or command how the jury should vote. Indeed, the state trial judge said she would have given the same instruction. Nothing in the bailiff's communication likely prejudiced the defendant, unlike the extrinsic communications about the defendant's innocence that the juror overheard in *Hall*. And "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. at 101 (quoting *Yarborough*, 541 U.S. at 664). *Hall*'s "great impact" rule is broad, so we give the Wisconsin Court of Appeals extra deference in its application of *Remmer* to Carter's case.

*Remmer* has been applied by our court in other cases post-AEDPA. *See, e.g.*, *Brown v. Finnan*, 598 F.3d 416, 423–24 (7th Cir. 2010); *Moore v. Knight*, 368 F.3d 936, 943 (7th Cir. 2004); *Oswald*, 374 F.3d at 477–78; *Whitehead*, 263 F.3d at 722–25. But we may not use our caselaw to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall*, 569 U.S. at 64. Nor may we "canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct." *Id*. Last, the certificate of appealability suggested the parties look to *United States ex rel. Tobe v. Bensinger*, 492 F.2d 232, 238–39 (7th Cir. 1974). *Tobe* precedes AEDPA, and the Supreme Court has admonished courts for applying pre-AEDPA circuit precedent. *Parker*, 567 U.S. at 49.

Carter counters that the effect of the bailiff's answer on the jury is unknown because the state trial judge never questioned the jurors. That may be. But *Remmer* has been interpreted to require federal courts considering habeas relief to

make a threshold decision whether the defendant has shown he was prejudiced by an intrusion upon the jury without knowing the true impact. Courts often engage in such threshold reasoning, such as on evidentiary questions. *See* FED. R. EVID. 104(a).

In sum, Carter's *Remmer* claim cannot overcome AEDPA's exacting limitations.[10] *Remmer* does not clearly establish that the bailiff's communication with the jury here was presumptively prejudicial. Nor was the Wisconsin Court of Appeals unreasonable in applying *Hall*'s rule.

## IV.  Conclusion

The Wisconsin Court of Appeals ensured Carter's appeal was "resolved in a way that is related to the merit of that appeal" by reviewing the extensive record, reading three briefs, and independently concluding his claim lacked arguable merit. *Robbins*, 528 U.S. at 278–79. So his *Anders* claim fails. Carter's *Remmer* claim also fails to clear the stringent requirements of AEDPA. For these reasons, we AFFIRM.

---

[10] Questions (1), (2), and (4) of the certificate of appealability are resolved here. We assume without deciding question (3), and we need not reach question (5) because we resolve the *Remmer* claim under AEDPA.