In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 24-3346

MAURICE J. HOLT,

*Petitioner-Appellee,*

*v.*

GARY BOUGHTON,

*Respondent-Appellant.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 21-cv-84-wmc — **William M. Conley**, *Judge.*

_____

ARGUED NOVEMBER 12, 2025 — DECIDED MARCH 30, 2026

_____

Before BRENNAN, *Chief Judge*, and ST. EVE and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge*. Three men entered an apartment and took property at gunpoint. A jury found that Maurice Holt was one of them and convicted him of armed robbery and other crimes. After exhausting his state appeals, Holt sought habeas relief in federal court. The district court granted his petition, reasoning that Holt should have been given the chance to present two photographs to the jury and

that his defense was undermined by his attorney's poor performance. Because the Wisconsin Court of Appeals reasonably applied Supreme Court precedent, we disagree on both points and reverse.

I

A

Two friends shared an apartment in a town north of Madison, Wisconsin, called Plover. Bored on a Friday night, they invited an acquaintance—Lyndell Dale—to join them. Dale brought three others with him, including Raevonne Gosha. The next evening, the roommates and Dale arranged to hang out a second time. Dale, Archie Biddell, and a third man were invited into the apartment, but this wasn't a social call. The three men displayed a gun, punched and kicked the roommates, threatened to kill them, and robbed them of electronics and guitars.

The victims quickly identified two of the robbers—Dale and Biddell—who were caught a few hours later and admitted to participating in the robbery, telling police that Maurice Holt, Gosha's uncle, had been the third robber. Both victims initially told police that the third robber had been Gosha, but two days later they weren't so sure—they said that the third man hadn't been at their apartment previously and that no one said Gosha's name during the robbery. One of the roommates described the third robber as Black, six feet tall, and 200-210 pounds.

Two days after the robbery, Holt sold guitars taken from the apartment to a music store, giving his real name and address as part of the transaction. Police later obtained and executed a search warrant for Holt's Wausau residence (where

Gosha was also living temporarily). Inside the house, officers found more stolen property taken in the robbery. During a police interview, Holt said that he bought the guitars from a woman on the street, and that he lived on the east side of Madison but had been staying in Wausau with his girlfriend. Wausau is a 40-minute drive directly north of Plover. He denied participating in the robbery and said that he had been in Wausau all weekend.

B

The state charged Holt with armed robbery, battery, intimidation, false imprisonment, and theft. He pleaded not guilty, and the case proceeded to trial. The prosecution centered on (1) Holt's sale of the guitars and possession of other stolen property; (2) Dale's and Biddell's pre-trial identifications of Holt as the third man; and (3) circumstantial evidence, including one of the victim's testimony that Holt looked like the third assailant; that Holt had lied to police about how he acquired the stolen property; that Holt generally matched the physical description the victims gave of the third robber; and trial testimony that both Holt and the third robber were from the east side of Madison.

Both victims testified that they had been mistaken that Gosha was with Biddell and Dale on the night of the robbery. One of the victims testified that the third man wore a black hoodie and was about six feet tall, described the robbers' gun as black and silver, and said that the third robber and Gosha didn't have the same build. The other victim recalled hearing the third man say that he was from the east side of Madison. The victims testified that the third man had not previously been to their apartment. But neither could positively identify Holt as one of the men who robbed them.

The state called the detective on the case, who testified that, during an interview, Holt told the detective that he lived on the east side of Madison. The detective also testified that Dale's Facebook page showed images of Dale, Biddell, and Gosha together and that Dale referred to this trio as the "Vendetta Squad." The detective said that a picture of Gosha and Dale displaying firearms was taken close in time to the robbery and that another image—from the night before the robbery—showed Gosha, Dale, and the victims together, with Gosha wearing a black jacket, possibly with a hood.

Dale and Biddell both pleaded guilty to participating in the robbery. They testified at Holt's trial and admitted their role in the crime. Biddle acknowledged having previously implicated Holt, but on the witness stand he testified that he did not know Holt and that he had only said Holt was involved to improve a plea deal. Dale alternated between confirming that Holt had participated in the robbery and denying that he was involved. Dale generally refused to answer questions about that night—he would not provide responsive answers, pleaded the Fifth Amendment right against self-incrimination, remained silent, and said that he wasn't going to talk.

Holt's attorney moved to cross-examine Dale with pictures found on Dale's Facebook page (reproduced below—we refer to these as the masked persons photographs). Defense counsel explained that the masked persons photographs were taken some five to seven hours before the robbery, and that—while the pictures showed masked individuals—Dale could testify that it was Gosha pictured holding a gun alongside Dale. Holt's attorney argued that the images tended to show that Gosha—not Holt—was the third robber. The court

denied the motion, finding that the masked persons photographs were dark and hard to see, lacked probative value, and were irrelevant.





The defense offered two primary theories: that Gosha was the third robber and that Holt had an alibi. Holt's girlfriend testified that the day after the robbery, Gosha came to her apartment (where Holt and Gosha were staying) carrying garbage bags with things inside. Holt testified that he wasn't involved in the robbery and that he bought stolen items from his nephew, Gosha. Contradicting his earlier statement to police that he'd been at his girlfriend's house, Holt and two friends testified that he had been with them the entire weekend.

During deliberations, the jury asked for Holt's height and weight, but those facts were not in evidence. The jury convicted Holt on all counts. The state court sentenced him to 12 years' imprisonment.

C

Holt filed a post-conviction motion seeking a new trial based primarily on the state court's exclusion of the masked persons photographs and his attorney's failure to present evidence. The post-conviction court held an evidentiary hearing on the motion, at which witnesses and Holt's trial attorney testified.

Holt's friend, Britney Quade, testified that on the night of the robbery, Holt had been asleep on a couch in her house. Quade said that she had possibly been using methamphetamine, but also testified that it was Gosha in the masked persons photographs, which were taken in her house, and that Dale, Biddell, and Gosha left her apartment on the night in question, returned later with electronics, and discussed the crime.

Holt's trial counsel also testified. He acknowledged the defense's two-pronged strategy (that Gosha was the third man and that Holt had an alibi) and said that, while he intended to call Quade as a trial witness, he unsuccessfully attempted to serve her with a subpoena one day before trial.

Holt's attorney also testified that he had no strategic reason for not calling another witness—Michael Hays—who told police that he had been with Gosha shortly after the robbery in a vehicle later found to contain stolen goods. Hays said that on the night in question he had been using methamphetamine and ecstasy and hadn't slept in three to four days. Hays also told police that (1) Dale said that he and Gosha were going to a party in Stevens Point (just north of Plover), (2) Gosha and Dale picked up Hays early on the morning after the crime, and (3) that Hays, Gosha, and Dale drove to an apartment together. Dale and Biddell were later arrested after a high-speed chase involving the same vehicle.

Holt's trial counsel acknowledged other non-strategic choices, including: (1) failing to impeach one of the victims using his prior statement that Gosha had been casing the apartment the night before the robbery, (2) failing to introduce evidence about Holt's and Gosha's heights and weights, (3) failing to elicit testimony that Holt's DNA wasn't found at the crime scene, and (4) failing to introduce a letter from Dale to Gosha that may have referenced both Holt and the robbery.

The post-conviction court denied Holt's motions, and the Wisconsin Court of Appeals affirmed. The Wisconsin Supreme Court denied Holt's petition for review, and so Holt turned to federal court, filing the habeas petition at issue here. The district court granted the writ, and Wisconsin appealed.

## II

The path to habeas relief is difficult. A federal court may disturb a state-court conviction only in narrow, defined circumstances. While we technically hear this appeal from the district court de novo, our focus is on the decision of the last state court to rule on the merits of Holt's claims (here, that's the Wisconsin Court of Appeals). See *Jewell v. Boughton*, 90 F.4th 1199, 1202 (7th Cir. 2024). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires us to give substantial deference to that state-court adjudication. 28 U.S.C. § 2254(d); *Scott v. Hepp*, 62 F.4th 343, 346 (7th Cir. 2023). When a claim has been decided on the merits, AEDPA bars federal habeas relief unless the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). We defer to the state court's factual findings, which we presume to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. *Id.* § 2254(e)(1). But even if a petitioner prevails under AEDPA, he still must show that any error "had a substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation modified); *Brown v. Davenport*, 596 U.S. 118, 135–38 (2022).

Holt's arguments center on § 2254(d)(1). He argues that the Wisconsin Court of Appeals unreasonably applied the United States Supreme Court's precedents in two ways: first by concluding that the trial court's exclusion of the masked persons photographs wasn't a harmful violation of his

Confrontation Clause and due process rights, and second by finding that his trial counsel's performance was adequate under *Strickland v. Washington*, 466 U.S. 668 (1984). We consider each of these arguments in turn.

A

Considering Holt's first claim for relief, the Wisconsin Court of Appeals held that "exclusion of the photographs did not deny Holt his right to present a defense." The Wisconsin Court of Appeals assumed that the trial court erred in preventing the introduction of the masked persons photographs (which could have been relevant evidence), but held that any error was harmless because "the probative value of the [masked persons photographs] was substantially outweighed by" the cumulative nature of the photographs, noting that a detective had already testified that there were images of an unmasked Gosha and Dale together, holding guns, close in time to the robbery. Of Holt's constitutional argument, the court wrote that "we have explained that the trial court had a valid basis to exclude the evidence, based in part on its cumulative nature, and there could be no constitutional dimension to an evidentiary argument that we reject on that ground."

Because the state appellate court assumed that excluding the photographs was error, Holt argues that it did not decide his constitutional claim on the merits. That matters because a merits ruling triggers the deferential standards of AEDPA. 28 U.S.C. § 2254(d); see *Wilson v. Neal*, 108 F.4th 938, 947 (7th Cir. 2024) (noting that if "no state court has squarely addressed the merits of a habeas claim," our review is de novo). In this case, Holt's claim involves both state evidence law and the federal Constitution. The Wisconsin Court of Appeals separately decided both aspects of the claim. The court assumed

an error of state evidence law, because the masked persons photographs were potentially relevant, contrary to the trial court's conclusion. But the court also found no constitutional error. Holt adequately presented his constitutional claim, and the court decided that the exclusion of the evidence "did not deny Holt his right to present a defense" because the evidence was cumulative, and so the trial court's decision did not implicate Holt's constitutional rights. See *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Since the Wisconsin Court of Appeals decided Holt's constitutional claim on the merits, the AEDPA standards apply to this claim.

Like Holt, the district court misread the Wisconsin Court of Appeals's opinion (the district court thought that the state court had found constitutional error) and so considered whether the state court applied the correct test for harmless error. See *Chapman v. California*, 386 U.S. 18, 24 (1967) (discussing the harmlessness standard for constitutional error in a criminal case). But because the court didn't find constitutional error, the right question to ask is different. We need to decide whether the state court's rejection of Holt's constitutional claim was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. See *Scott*, 62 F.4th at 346; 28 U.S.C. § 2254(d)(1).

The Sixth Amendment, as incorporated through the Fourteenth Amendment, guarantees the right of an accused to confront the witnesses against him. *Hemphill v. New York*,

595 U.S. 140, 150 & n.3 (2022). The Fourteenth Amendment's Due Process Clause, Compulsory Process Clause of the Sixth Amendment, and Fifth Amendment's privilege against self-incrimination protect a defendant's right to testify in his defense. *Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987). And "whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citation modified). These rights are not absolute, however. *Sarfraz v. Smith*, 885 F.3d 1029, 1037 (7th Cir. 2018). For instance, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," *Holmes*, 547 U.S. at 324 (citation modified), meaning (among other things) that judges may exclude repetitive evidence or that which is "only marginally relevant," *id.* at 326–27 (citation modified). See also *Hinkle v. Neal*, 51 F.4th 234, 243–44 (7th Cir. 2022) (exclusion of peripheral or cumulative evidence does not violate the right to present a complete defense). That said, "restrictions on a criminal defendant's right to confront adverse witnesses and present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 151 (1991) (citation modified).

Like Federal Rule of Evidence 403, Wisconsin has a statute permitting the exclusion of relevant evidence "if its probative value is substantially outweighed by … considerations of … needless presentation of cumulative evidence." Wis. Stat. § 904.03. The Wisconsin Court of Appeals invoked that rule in finding that the exclusion of the photographs didn't

violate Holt's constitutional rights. Adopting the trial court's reasoning, the Court of Appeals held that "there was little added value in the jury learning whatever Dale might have had to say about the low quality images of the two masked persons," such that "the probative value of the masked persons evidence was substantially outweighed by the fact that a detective testified at trial that the detective had viewed photographs of Dale and [Gosha] displaying what appear to be firearms, including one photo taken 'quite near in time to' the robbery, with [Gosha] possibly wearing a black hoodie."

Holt argues that photographs cannot be cumulative of testimony describing the images, and that the masked persons photographs corroborated a contested fact (the identity of the third robber). But while the masked persons photographs are undoubtedly different than the detective's testimony—and included additional details, including a weapon that appears similar to that described by the victims of the robbery—both the testimony and photographs were probative of the same fact: that Gosha and Dale had been together with weapons close in time to the robbery. And that fact was uncontested. The cases Holt cites don't disagree or are distinguishable. See *Mosley v. Atchison*, 689 F.3d 838, 849–50 (7th Cir. 2012) (excluded testimony was non-cumulative when it would have been probative of a contested fact); *Arizona v. Fulminante*, 499 U.S. 279, 299 (1991) (confessions could have corroborated one another on a contested issue and so were not cumulative).

Holt argues that the appellate court needed to give special consideration (beyond the standard evidentiary balancing test) to his right to present a complete defense. Yet the cases he cites involved evidence that was central to the defense— *Olden v. Kentucky*, 488 U.S. 227, 232–33 (1998); *Rhodes v.*

*Dittmann*, 903 F.3d 646, 656 (7th Cir. 2018); *Harris v. Thompson*, 698 F.3d 609, 629 (7th Cir. 2012)—and that's not what we have here. As the Wisconsin Court of Appeals recognized, the photographs may have had some relevance (we need not decide that issue). Perhaps Dale would have testified that it was Gosha and Dale in the images, and one of the masked men appears to be holding a gun and wearing clothing consistent with the victims' description of the third robber. These facts, if proven, might have made it more likely that Dale and Gosha later committed the robbery together. But the images weren't clear and the detective had already testified about Gosha and Dale appearing in a similar image taken around the same time. As a result, we agree with the Wisconsin Court of Appeals that the images were of only peripheral importance, such that state evidence law didn't need to give way. See *Sarfraz*, 885 F.3d at 1038 ("Given the extensive evidence [a defendant] was allowed to introduce, the incremental impact of the excluded evidence would have been slight."). And while the Wisconsin Court of Appeals didn't cite or discuss federal law on the intersection of the complete defense right and evidentiary rules, it didn't need to. See *Early v. Packer*, 537 U.S. 3, 8 (2002). All that matters is that the reasoning and result of the state-court decision do not contradict federal law. See *id.*

The Wisconsin Court of Appeals considered the probative value of the masked persons photographs and concluded that the images were cumulative of other evidence, such that their exclusion did not violate the Constitution. Given the low probative value of this evidence and the detective's prior testimony, the exclusion of the photographs wasn't arbitrary or disproportionate. See *Lucas*, 500 U.S. at 151; *Holmes*, 547 U.S. at 324; *Horton v. Litscher*, 427 F.3d 498, 506–08 (7th Cir. 2005)

(finding that exclusion of evidence as cumulative did not violate constitutional rights). The court's denial of Holt's constitutional claim was not contrary to or an unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1).

Failure to show error is fatal to Holt's claim. See *Scott*, 62 F.4th at 346. Even if we found that exclusion of the photographs violated Holt's complete defense right, however, he would face a further hurdle: the need to show that the exclusion resulted in prejudice, meaning that the trial court's evidentiary ruling had a "substantial and injurious effect or influence" on the verdict. *Brecht*, 507 U.S. at 637 (citation modified). To find prejudice, there must be "more than a reasonable probability that the error was harmful," because a state is "not to be put to the arduous task of retrying a defendant based on mere speculation." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (citation modified). Habeas relief is only appropriate if we have "grave doubt" about the outcome. *Brown*, 596 U.S. at 135–36.

Each court to have reviewed this case has acknowledged that the evidence against Holt wasn't overwhelming. But given the murky photographs at issue, Dale's general refusal to answer questions on the stand, and the uncontested testimony from a detective about Gosha's contacts with Dale, we do not have grave doubt about the outcome based on this evidentiary ruling. The addition of these images to Holt's defense would not have created a reasonable probability that the jury would have gone the other way. Either because Holt cannot show that the Wisconsin Court of Appeals unreasonably applied Supreme Court precedent or because any error wasn't prejudicial, Holt cannot secure habeas relief on this basis.

B

Holt's other claim is for ineffective assistance of counsel. To succeed, he must show (1) that his counsel's performance was deficient, and (2) that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance falls below an objective standard of reasonableness. See *id.* at 688. Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation modified). A court considering a *Strickland* claim need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

The Wisconsin Court of Appeals dealt with Holt's ineffective assistance of counsel claim on the merits, which means AEDPA standards apply. See 28 U.S.C. § 2254(d); *Carter v. Tegels*, 135 F.4th 534, 541 (7th Cir. 2025). We confine ourselves to this question: was the state court's conclusion that Holt's defense was not prejudiced by his attorney's deficient performance contrary to or an unreasonable application of *Strickland*? 28 U.S.C. § 2254(d)(1). Even if the state court is wrong in some way, that's not enough: to secure habeas relief, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Holt's claim presents somewhat unusual circumstances. During the post-conviction proceeding, his attorney admitted to a series of non-strategic choices and mistakes. In general, our review of an attorney's performance is deferential. To minimize "the distorting effects of hindsight" we take "a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. But that approach applies only to strategic choices, and the "consequences of inattention … are not entitled to the presumption of reasonableness." *Mosley*, 689 F.3d at 848. Courts "may not indulge in post hoc rationalization for counsel's decisionmaking that contradicts the available evidence of counsel's actions," but the overarching analysis is objective—*Strickland* "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 109–10 (citation modified). Inadvertent mistakes do not make relief automatic, *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003), and neither does a trial attorney's acknowledgement of errors, see *Bryant v. Brown*, 873 F.3d 988, 998 (7th Cir. 2017).

In his state-court appeal, Holt argued that his counsel's performance was deficient in 13 different ways. The Wisconsin Court of Appeals rejected those arguments either because Holt failed to show deficient performance, prejudice, or both. The district court found ineffective counsel based on five areas of prejudicial deficient performance, concluding that Holt's attorney failed to: (1) call Britney Quade, (2) call Michael Hays, (3) introduce evidence on the absence of DNA, (4) introduce height and weight evidence, and (5) introduce a victim statement that Gosha had been casing the apartment the night before the robbery. Before us, Holt argues that his counsel fell short in the five ways the district court identified together with one addition: failure to introduce a letter from Dale to Gosha. We consider each of these potential bases for ineffective assistance in turn and then decide whether counsel's errors cumulatively add up to prejudice.

1

The Wisconsin Court of Appeals found that Holt failed to show deficient performance related to Quade's testimony "because there was a clear, strong strategic benefit to not calling Quade as a witness"—reasoning that she would have undermined Holt's alibi defense (Quade said Holt was at her house the night of the robbery, but Holt and other witnesses testified that he was elsewhere). Acknowledging that Quade's testimony could have been useful to implicate Gosha in the robbery, the court nonetheless found that, given significant impeachment problems (methamphetamine use and Quade's close relationship with Holt) and the damage her testimony could have done to the alibi defense, it wasn't objectively unreasonable for defense counsel not to call her.

We need not decide whether the state court was right that the failure to call Quade wasn't deficient performance, because Holt cannot show any related prejudice. See *Westray v. Brookhart*, 36 F.4th 737, 749 (7th Cir. 2022). Because the state court ruled only on deficient performance, we review the prejudice extending from this instance of deficient performance de novo. *Nissenbaum v. Jennings*, 148 F.4th 548, 553 (7th Cir. 2025). And under that standard we have no trouble concluding that the failure to call Quade did not prejudice the defense. As the state court explained, Quade would have testified that Holt was at her house on the night of the robbery, in direct conflict both with Holt's statement to police (that he had been at his girlfriend's residence on the night of the robbery) and testimony at trial that he had been with other friends. And Quade had significant credibility problems (her drug use and close relationship with Holt) that the government likely would have exposed on cross-examination. Holt

cannot show a reasonable probability of a different outcome, and so there's no prejudice related to the failure to call Quade.

2

The Wisconsin Court of Appeals assumed without deciding that it was deficient performance that Holt's attorney failed to call Hays to testify. But the court further found that any error was not prejudicial. The court explained that Hays's testimony "provided only indirect inferences" about the identity of the third robber, noted Hays's credibility problems (his drug use and lack of sleep), and found that his potential testimony wasn't necessarily at odds with the state's case, because prosecutors did not dispute that Gosha had closely associated with Dale around the time of the robbery. The court concluded that Hays's testimony would not "have shed significant additional light on facts that mattered."

While this testimony might have had more importance than the state court ascribed to it, reasonable minds could differ as to whether it would have mattered to the outcome. Finding prejudice requires a "reasonable probability" that the "result of the proceeding would have been different." *Cullen*, 563 U.S. at 189 (citation modified). Noting Hays's limited credibility and the indirect nature of his testimony, the state court reasonably applied *Strickland* in finding that counsel's failure to call Hays was not prejudicial.

3

Holt argues that his attorney was ineffective because he did not present evidence that Holt's DNA wasn't found on a piece of paper touched by the third robber. While defense counsel referenced the absence of DNA evidence tying Holt to the robbery in both his opening and closing statements,

neither side called a DNA expert to testify and no actual evidence about DNA was presented to the jury.

The state court assumed that defense counsel's failure to introduce DNA evidence was deficient performance. But the court found no related prejudice because "the evidence of Holt's primary involvement in the robbery would have been consistent with him possibly leaving little deducible DNA at the scene," and the defense repeatedly invited the jury (without objection) to observe that the prosecution was unable to present DNA evidence linking Holt to the crime. Without deciding whether counsel's performance was deficient, we agree with the state court's analysis of prejudice. While there was evidence that the third robber touched a piece of paper at the scene of the crime, the addition of records or testimony showing that Holt's DNA was excluded from that object would not have created a reasonable probability of a change in outcome. Although the Wisconsin Court of Appeals didn't consider this point, Biddle's and Dale's DNA wasn't found at the scene, either, suggesting that the absence of Holt's DNA was not significant. While Holt argues and the district court held that the Wisconsin Court of Appeals unreasonably interpreted the facts, the state court adequately summarized the record and wasn't required to enunciate every detail about this evidence. See 28 U.S.C. § 2254(e)(1). The bottom line is that the state court reasonably concluded that the prosecution could have easily explained the absence of a DNA link to Holt, such that he cannot show prejudice on this basis.

4

Holt next argues that his counsel was ineffective because he failed to present evidence that he and Gosha were different in height and build. Had it been introduced, evidence could

have shown that Holt was 5′9″ and around 200 pounds, while his nephew was six feet and around the same weight. Holt argues that this evidence was significant because the victims testified that the third robber was about six feet tall. The state court found that Holt could not show prejudice. The court reasoned that the difference in height between Holt and his nephew was not significant because "a reasonable juror would understand that, at least in circumstances like this, perceived heights are at best rough estimates."

Holt and the district court make much of the fact that the jury asked for Holt's height and weight during deliberations. But the fact that the jury was interested in how closely Holt matched the victims' descriptions of the third robber does not mean that the narrow difference between the two men, if introduced, would have created a reasonable probability of a change in outcome. As the state court correctly noted, the height difference between Holt and Gosha was so small that it likely would not have mattered. The Wisconsin Court of Appeals reasonably applied *Strickland* in considering the height and weight evidence.

5

During a police interview, one of the victims said that Gosha and Dale had been casing the apartment on the night before the robbery. Holt's attorney failed to elicit that statement or impeach the victim with it, and (at the post-conviction hearing) said that his failure to do so was a mistake and not a choice. The Wisconsin Court of Appeals found that the statement would have been cumulative of other testimony showing that the victims had initially identified Gosha as the third assailant and (as a result) concluded that Holt could

show neither deficient performance nor prejudice based on his counsel's failure to elicit this additional evidence.

As a technical matter, we agree with the district court that a statement that Gosha had been casing the apartment the night before the robbery is not cumulative of statements that Gosha was the third robber. But the Wisconsin Court of Appeals's analysis was not "so lacking in justification that there was an error … beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Even if we were to agree with the district court that the failure to introduce this evidence was deficient performance, we have no trouble concluding that Holt cannot show related prejudice. Given that the victims had initially identified Gosha as the third assailant and retracted that identification, it was not unreasonable for the Wisconsin Court of Appeals to conclude that an additional statement made to police that Gosha had been casing the apartment would not have created a reasonable probability of a different outcome.

6

Holt's last basis for his *Strickland* claim is his counsel's failure to question Dale about a letter from Dale to Gosha. The letter was written in slang or code, but, according to Holt's attorney, it would have shown that Dale was coaching Gosha to implicate Holt in the crime. Holt's attorney said he intended to impeach Dale with the letter and could not recall a strategic reason for failing to do so.

We agree with the state court that Holt cannot show prejudice based on the failure to introduce this evidence. That Holt's attorney didn't have a strategic reason for his failure doesn't mean that this mistake was automatically prejudicial.

Dale testified that Holt was not the third robber, and that he had falsely told police that Holt was involved in the crime. The letter could easily have implicated Holt—according to Holt's translated version, Dale wrote that Holt had a gun on the night of the robbery. Because this evidence was inconclusive and ambiguous, there's no reasonable probability that, but for counsel's failure to introduce its contents, the outcome would have been different. The state court did not unreasonably apply *Strickland* on this basis.

7

Thus far, we have considered whether Holt was prejudiced by his counsel's errors considered on an individual basis. But if the record shows multiple instances of deficient performance, *Strickland* also mandates a cumulative assessment. See *Myers v. Neal*, 975 F.3d 611, 623 (7th Cir. 2020). The Wisconsin Court of Appeals conducted that analysis. While noting that the state's case wasn't overwhelming, the court identified the significant evidence introduced against Holt including: that he sold stolen property shortly after the robbery, evidence that both Holt and the third robber were from the east side of Madison, and Biddell's and Dale's pretrial identifications of Holt as the third assailant. The court also explained the ways in which both Holt's alibi defense and the argument that it was Gosha, not Holt, who was the third robber, were undermined by the prosecution's case and by Holt's pre-trial statements. Considering the record as a whole, the state's case was not so weak that defense counsel's errors—individually or together—caused a substantial likelihood of a different result.

REVERSED